This action was instituted by the plaintiffs, who are the heirs at law of George W. Sanderlin and his wife, E. W. Sanderlin, for the purpose of setting aside sales of a tract of land and the timber thereon, situated in the county of Pasquotank, which sales were made by E. F. Aydlett, trustee, to James Parker and J. D. Parker, the trustee claiming the right to do so by virtue of a deed of trust, and asking that the plaintiffs be declared the owners of the land, subject only to such amount upon an accounting as may be found due on the debt secured in the deed of (236) trust. The defendants, heirs at law of James and J. D. Parker, claim title to said lands under said sales by said Aydlett, trustee, and also rely upon the statutes of limitations.
The evidence introduced by the parties supports the following facts:
1. That on 6 August, 1894, E. W. Sanderlin and her husband, George W. Sanderlin, ancestors of the plaintiffs, executed to E. F. Aydlett, trustee, party of the second part, and James Parker and J. D. Parker, ancestors of the defendants, of the third part, the deed of trust set out in the record, to secure the sum of $8,987.27, an indebtedness recited to be due the said James Parker and J. D. Parker by the said E. W. Sanderlin and George W. Sanderlin, the indebtedness therein recited being payable six, seven, eight, nine, and ten years after date, with interest thereon from date until paid at the rate of 6 per cent per annum, payable semiannually, which deed of trust conveyed the tract of land in controversy in this action, and on which the timber mentioned in the pleadings stood, the tract containing 1,744 acres.
2. That the following provision in reference to sale is in said deed of trust:
"If the said E. W. Sanderlin shall fail or neglect to pay interest on said bonds as the same may hereafter become due, or both principal and interest at the maturity of the bond, or any part of either, then, on application of said James or John Parker, his assignee, or other person who may be entitled to the moneys due thereon, it shall be lawful and the duty of the said E. F. Aydlett to advertise in three or more public *Page 287 
places in Pasquotank County aforesaid for a time not less than thirty days, therein appointing a day and place of sale, and at such time and place to expose said land at public sale to the highest bidder for cash, and upon such sale to convey title to the purchaser. And the said Aydlett first retaining 5 per centum commissions on the sale of the whole of said land sold as a compensation for making such sale out of the proceeds of such sale, and apply so much of the residue as may be necessary to pay off and discharge said bond and all interest then accrued and due thereon, both those due and not due, and shall pay the surplus, if any remain, to said E. W. Sanderlin."
3. That on 4 November, 1899, the said E. F. Aydlett, trustee, assuming to act under said deed of trust, sold land at public sale and executed and delivered to the Elizabeth City Lumber Company, a corporation, the deed set out in the record, which deed purports to convey the pine timber 14 inches and more in diameter, or that may reach that size during five years, on the tract of land set out in the deed of trust, the deed from said Aydlett, trustee, reciting that the said Elizabeth City Lumber Company, grantee, "bid for the same the sum of $5,000, which was the last and highest bid, and the said Elizabeth City (237) Lumber Company was declared the purchaser," and granting unto said Elizabeth City Lumber Company five additional years, if necessary, to cut and remove the timber, upon the payment to James Parker and J. D. Parker of 6 per cent interest on the $5,000 from the end of five years from date, and further granting rights of way over said lands.
4. That on the same day as the conveyance by said Aydlett, trustee, of the timber to said Elizabeth City Lumber Company, as set forth in the next preceding paragraph, the said E. F. Aydlett, trustee, executed and delivered a deed to James Parker and J. D. Parker for the tract of land mentioned in said deed of trust, excepting therefrom the pine timber described in the said conveyance from said Aydlett, trustee, to said Elizabeth City Lumber Company. The consideration expressed in said deed to James Parker and J. D. Parker is $7,460, and, as recited in said deed from said Aydlett, trustee, "did not include the pine timber of 14 inches in diameter or more which was sold to the Elizabeth City Lumber Company at the same time and immediately before the sale of the property hereinafter described, with the understanding that the said Elizabeth City Lumber Company should have five years within which to cut and remove the said timber; and whereas the said bid was the last and highest, and best bid, the said James and J. D. Parker were declared the purchasers."
5. That at the time of said sale on 4 November, 1899, neither installment of said indebtedness had fallen due, the first installment as provided in the bond and deed of trust maturing on 8 August, 1900, nine *Page 288 
months and two days subsequent to the said sale to the said Elizabeth City Lumber Company and the said James and J. D. Parker, but that one or more semiannual payments of interest were past due and unpaid.
6. That at the time of the execution of the said deed of trust to E. F. Aydlett, trustee, on 6 August, 1894, George W. Sanderlin and wife, E. W. Sanderlin, with their family, were living in the city of Washington, District of Columbia.
7. That George W. Sanderlin died in Enoch Pratt's Hospital, near Baltimore, Md., on 6 November, 1899, two days subsequent to the sale and conveyance of the land and timber by E. F. Aydlett, trustee, to James and J. D. Parker and Elizabeth City Lumber Company, respectively.
8. That George W. Sanderlin, at the time of his commitment to the Enoch Pratt Hospital, was mentally incompetent, and from the time he was committed to said hospital until his death, embracing a period of about three years, and for a year prior to his committal, he was not capable of transacting business; that he was mentally incompetent for four years before he died.
(238) 9. That about a month before the death of George W. Sanderlin he fell and broke his hip, his physical and mental condition thenceforth requiring the frequent attention of his wife, the said E. W. Sanderlin, at his bedside.
10. That James and J. D. Parker, the cestuis que trustent, were on 4 November, before the sale, made acquainted with the condition of George W. Sanderlin, and were shown a letter received by the trustee Aydlett requesting a postponement of the sale; that the matter of postponing the sale was considered by the trustee and the cestuis que trustent, and after talking it over with them, the trustee sold the land and timber upon demand of the creditors and executed the conveyances referred to in the record.
11. That the expense of maintaining George W. Sanderlin at the Enoch Pratt Hospital was more than $100 a month, and that E. W. Sanderlin had to keep boarders in order to enable the expense to be borne, and that it was necessary for three or four of the family to occupy one room in order to help, out of the rents received from the other portions of the house, to defray the hospital expenses and to keep their children, girls, four in number, at school; and that because of the burdens incident to the hospital expense and caring for the family, they were living in straitened circumstances; and that this financial embarrassment and the causes thereof were at the time of said attempted sale well known to the said trustee, Aydlett, and to the cestuis que trustent, James and J. D. Parker.
12. That on the said day of the sale and prior thereto a representative of the Elizabeth City Lumber Company met James and J. D. Parker in *Page 289 
the rear room of the law offices of the trustee, E. F. Aydlett, and it was then and there agreed that the Elizabeth City Lumber Company would take the timber on said lands at the sum of $5,000, and that the Parkers would take the land at $7,460. The trustee was not present, however, and knew nothing of this agreement until after the sale.
13. That Mrs. E. W. Sanderlin had an offer from a person living in Philadelphia, who was negotiating a short time prior to the foreclosure for the purchase of the land at the price of $15,000, and the land and timber were sold for $12,460.
14. That the trustee, E. F. Aydlett, was the attorney for Elizabeth City Lumber Company.
15. That the trustee, E. F. Aydlett, was the general counsel for James and J. D. Parker, representing them in their business in his section.
16. That the defendants and their ancestors, James and J. D. Parker, have been in possession of the lands from about November, 1899, and that Mrs. E. W. Sanderlin died in 1912.
Several of the plaintiffs testified that their mother did not (239) know the land and timber were sold separately by the trustee; but they also said they never heard their mother speak of it.
The defendants offered seven or eight witnesses who were present at the sale who testified that the land and timber were not sold separately, but as a whole, and the only evidence to the contrary is the recitals in the deeds executed by the trustee.
They also offered evidence of several witnesses that the land sold for its value at the sale, and the only evidence to the contrary is the offer of the party from Philadelphia to buy for $15,000.
The plaintiffs asked that the deeds be set aside and that they be allowed to redeem the land for the reason, as alleged by them, (1) that the trustee on 4 November, 1899, in violation of the terms of the trust, sold the land separate and apart from the timber; (2) that none of the conditions which give to the trustee the right to sell existed, and (3) that there was collusion between the Parkers and prospective bidders, which suppressed and depressed the sale.
The defendants denied that the land and timber were sold separately, averred that they were sold together and in accordance with the terms of the trust, and that the deeds last above referred to were made for convenience only; averred that what was done at the sale was done with the full knowledge and ratification of Eliza W. Sanderlin, and pleaded the three, seven, and ten years statutes of limitations.
At the conclusion of the evidence, his Honor, on motion of the defendants, entered judgment of nonsuit, and the plaintiffs excepted and appealed. *Page 290 
The cause of the plaintiffs has been presented with zeal and ability, and circumstances have been called to our attention which, from the viewpoint of the plaintiffs, are calculated to excite sympathy and to arouse indignation; but we can give no weight to these matters except in so far as they relate to the legal questions involved in the appeal.
The exercise of the power of sale by the trustee upon the demand of the secured creditors at a time when the wife, who was the owner of the property, was at the bedside of a dying husband was a harsh exercise of a power which is not favored and is jealously guarded at all times; but we must keep in mind the admonition of our predecessors, that "Hard cases are the quicksands of the law."
(240) The plaintiff's cause of action, as stated in the complaint, is for the purpose of redeeming the tract of land sold under the power in the trust deed on 4 November, 1899, upon the grounds (1) that none of the conditions existed at that time which gave the trustee the right to sell; (2) that at the sale there was collusion for the purpose of suppressing bidding; (3) that the trustee, in violation of the terms of the deed of trust, sold the land and timber separately when he was only authorized to sell the land with the timber on it.
The trust deed secures a note payable in six, seven, eight, nine, and ten years after date, with interest from date, payable semiannually, and it authorizes a sale upon failure "to pay interest on said bond as the same may hereafter become due, or both principal and interest at the maturity of the bond, or any part of either"; and it directs the trustee, after the payment of his commissions, to "apply so much of the residue as may be necessary to pay off and discharge said bond and all interest then accrued and due thereon, both those due and not due."
This provision clearly contemplates a sale before the maturity of the bond, and upon failure to pay any installment of interest, and as interest was due and unpaid at the time of the sale, the trustee had the right to sell. Capehart v. Dettrick, 91 N.C. 344; Gore v. Davis, 124 N.C. 234.
In the last case cited the terms of the mortgage were very much like those in the trust deed before us, and it was held that the mortgage could foreclose before the maturity of the bond upon failure to pay interest; and if he could foreclose by decree, he could sell under the power.
The Court said: "The note sued on was dated 19 October, 1897, and payable three years after date, but the interest was made `due and *Page 291 
payable semiannually.' The mortgage to secure the note specified, `If default shall be made in payment of said bond or the interest on the same, or any part of either at maturity,' the creditor could proceed to sell the land and out of proceeds of sale `pay said bond and interest on the same.' The defendant failed to pay the interest which fell due 19 April, 1898. By the conditions of the mortgage the principal and interest became due. The demurrer of the defendant, that this action for judgment on the note and foreclosure of the mortgage was premature, was properly overruled."
Nor do we find any evidence in the record of combination to suppress bidding at the sale. There is evidence that the purchasers, James Parker and J. D. Parker, and the manager of the Elizabeth City Lumber Company entered into an agreement on the day of the sale that in the event the Parkers bought, the lumber company would take the timber and the land for $5,000; but this, according to the (241) evidence, was not made known at the sale, and instead of decreasing, would have a tendency to increase the amount bid.
The sale was duly advertised, was conducted openly, and opportunity was given to any one who desired to buy to do so.
This leaves remaining, as a sole ground upon which the plaintiffs can demand relief, that the trustee exceeded his power in selling the timber and land separately instead of selling the land with the timber on it as a whole; and for this reason they ask that the sale be set aside and that an accounting be had, which brings the action within the meaning of an action to redeem; and, if so, it is barred after ten years (Edwards v. Tipton,85 N.C. 479; Bernhardt v. Hagaman, 144 N.C. 526), as it is not denied that the defendants and those under whom they claim have been in the open, notorious possession of the land since 1900.
In the Bernhardt case this statute of limitations was applied to a deed of trust.
The plaintiffs, however, contend that the ten years statute has no application, and that the action is controlled by Revisal, sec. 395, subsec. 9, which says that in an action for relief on the ground of fraud or mistake, the cause of action shall not be deemed to have accrued until the discovery of the aggrieved party of the facts constituting such fraud or mistake, and that the action of the trustee in selling the land and timber separately was a fraud upon their rights which they did not discover until January, 1913, less than three years from the commencement of the action.
Conceding that there was evidence of fraud, the plaintiffs have failed to bring themselves within the language or spirit of the statute.
The burden was upon them to prove not only that they had not discovered the fraud, which consisted of selling the land and timber *Page 292 
separately, but also that their mother, who lived until 1912, about thirteen years after the sale, did not know the facts; and when we examine the evidence, we find that although they testify that their mother did not know it, and we do not question their credibility, they explain this statement by saying that they have come to this conclusion because they never heard their mother say anything about it, and that their mother never told them whether she knew how the sale was conducted or not.
This does not come within the rule of contradictory statements, which must be submitted to the jury; but the latter statements of the witnesses are explanatory of the first, and when considered as a whole, simply amount to saying that the witnesses never heard their mother refer to the matter.
(242) To illustrate, we give an excerpt from the examination of the principal witness for the plaintiffs:
Q. "Where did you get the information that she did not know that the timber and land were sold separately?" A. "Because she never mentioned it in our conversation."
Q. "That is the only way you know it?" A. "That is the only way I know it."
If, however, there was evidence that the mother did not know how the sale was conducted, this would not conclude the matter, for, "under authoritative decisions here and elsewhere construing this and similar statutes, it has been very generally held that these words, `the action not to be deemed to have accured until the discovery of the facts constituting the fraud,' etc., by correct interpretation mean until the impeaching facts were known or should have been discovered in the exercise of reasonable business prudence." Ewbank v. Lyman, 170 N.C. 508.
"A man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish. In such case a man's failure to note facts of this character should be imputed to him for knowledge, and in the absence of any active or continued effort to conceal a fraud or mistake, or some essential facts embraced in the inquiry, we think the correct interpretation of the statute should be that the cause of action will be deemed to have accrued from the time when the fraud or mistake was known or should have been discovered in the exercise of ordinary diligence." Peacockv. Barnes, 142 N.C. 218.
The sale was made in 1899, and two deeds were immediately executed, one conveying the land to James and J. D. Parker and the other *Page 293 
conveying the timber to the Elizabeth City Lumber Company, and these deeds were placed upon the record within two weeks.
The mother of the plaintiffs knew that the sale had been made, and the purchasers of the land were in the open possession thereof, claiming it as their own, and it is a fair presumption that the timber was cut eight or nine years before this action was commenced, as the timber deed only gave five years for cutting, with an extension clause of five years.
Under these circumstances, ordinary prudence would require some investigation, and the slightest examination of the record would have disclosed that the deeds recited that the land and timber were sold separately.
It is true that in several of the cases, such as Modlin v. R. R., (243)145 N.C. 226; Tuttle v. Tuttle, 146 N.C. 493, and others, it is said that the registration of a deed is not sufficient to put a party on notice that a fraud has been committed; but in those cases the action was based on fraudulent representations in procuring a deed, and the record did not disclose any fraud or violation of trust, while in this case the record shows all of the facts for which the plaintiffs contend, and, in addition, there is the circumstance of possession.
In the Tuttle case the distinction is inferentially drawn when the Court says: "The fact that the commissioner made a deed to the Corpenings on 22 December, 1902, if registered, would not even put the plaintiffs upon inquiry, much less fix them with the notice that a fraud had been committed, as there is no evidence of that upon the face of the deed."
Why say this if it was not intended to convey the idea that if the facts appeared on the face of the deed it would be notice?
The case of Dunn v. Beaman, 126 N.C. 771, is strong authority for the position that when the facts appear on the record, the party is affected with notice. In that case a valuable tract of land was devised in 1844 to the children of John R. Beaman. The father qualified as guardian for the children and filed an ex parte petition for a sale of the land for partition, and the land was sold and the sale confirmed, and the guardian received the purchase money. The children of Mr. Beaman did not know until within three years prior to the institution of their action that any land had ever been devised to them or that their father was their guardian, or that the land had been sold. They presented their claim against the estate for the purchase money of the land, and having been made parties to a creditors' bill, one of the creditors pleaded the statute of limitations to the claim, and the children, while disavowing any charge of intentional fraud upon the part of their father, replied that they had discovered the facts within three *Page 294 
years. The contention was not sustained, and it was held that their cause of action was barred.
The Court said: "The children had legal notice of the facts. The will of Carraway, under which their title accrued, was probated and recorded in 1844, and the land devised to them was sold for partition in 1861 at the courthouse door after due advertisement under a decree in equity; the proceedings in equity were duly recorded, to which three of the children, who were adults, together with their husbands, were parties praying the sale, and the decree of confirmation was properly enrolled. The deed from the clerk and master to the purchaser was duly recorded in the register's office, and was notice to the children as well as (244) to all the world, and they were put on notice by the recitals therein contained."
We have thus far dealt with the question assuming that the land and timber were sold separately, and there is evidence of this fact growing out of the recitals in the deeds; but on the trial the defendants introduced eight or ten witnesses who testified that the land was put up for sale and sold as a whole without any reference to the timber, and that the deeds were afterwards made separately for the land and the timber for the convenience of the parties.
There was also evidence offered by the defendants that the price paid for the land, $12,460, was its full value at that time, and the only evidence to the contrary was that the mother of the plaintiffs had been offered $15,000 for the land about the time of the sale by a party living in Philadelphia.
We have carefully considered the case, and being of opinion that in any aspect of the evidence the cause of action of the plaintiffs is barred by the statute of limitations, the judgment of nonsuit is
Affirmed.
Cited: Lanier v. Lumber Co., 177 N.C. 206 (5c); Latham v. Latham,184 N.C. 64 (4c, 5c); Pasquotank County v. Surety Co., 201 N.C. 333 (4c);Stancill v. Norville, 203 N.C. 462 (5c); Hargett v. Lee, 206 N.C. 539 (5c);Worley v. Worley, 214 N.C. 313 (1c); Spain v. Hines, 214 N.C. 435 (1p);Johnson v. Ins. Co., 219 N.C. 205 (4c); Blankenship v. English, 222 N.C. 92
(5c); McLain v. Ins. Co., 224 N.C. 840 (5c). *Page 295