Civil action, tried and determined on the pleadings.
The action was instituted in said county on 10 October, 1916, by plaintiffs, certain grandchildren of Fred P. Latham, deceased, successors in title to the pro rata rights and interests of A. C. Latham, Josephine Potts, and Henrietta Tripp, all now deceased, and who took and hold their rights as among the devisees and heirs at law of said F. P. Latham, against S.W. Latham, executor of the will of F. P. Latham, and trustee of certain portions of the real estate under said will.
Subsequent to the institution of the suit, defendant S.W. Latham, executor, died, and by order duly entered his executrix and heirs at law and devisees under his will have been made parties defendant. On matters more directly pertinent to the questions presented, the original complaint alleges: *Page 57 
"That Frederick P. Latham, late of the county of Craven, North Carolina, died on 3 October, 1866, leaving a last will and testament, which will was duly proven in open court and in due form of law, and recorded in the office of the clerk of the Superior Court of Craven County, by the terms of said will he devised to the defendant Samuel W. Latham the following real estate, to wit: `The plantation whereon my son Alex. C. Latham now resides, containing 820 acres, which comprises all of the land which I acquired by descent from, and by purchase from, the heirs at law of Rufus W. Latham, together with certain personal property therein named, the said devise being contained in item 3 of said will, to hold the said land and personal estate upon the following uses and trusts, that is to say, that the said Samuel W. Latham shall from year to year collect and receive the rent hires, interest, and benefits of all the said estate comprised in this clause, and shall equally pay out and appropriate the same for the maintenance and support of my son, Alex. C. Latham, and his family, during the natural life of the said Alex. C. Latham, then in trust to convey the said estate in absolute property to such child or children (or the representatives of such as may be dead) of the said Alex. C. Latham as may him survive.' By the terms of item 8 of said will, Fred P. Latham made the following devise:
"After the death of my wife, all the estate described in the first clause of my will and given to my wife for life, except such as has been heretofore disposed of, I give and bequeath to be equally divided between my four daughters, Mary Eliza Hancock, Pauline Whitehurst, Henrietta Tripp, and Josephine Potts, the share of said Josephine Potts to be held in trust by my son, Samuel W. Latham for the sole and separate use of said Josephine Potts, discharged from all the liabilities of said husband, William Potts."
A copy of the said will is hereto attached and marked Exhibit "A," and made a part hereof as much so as if pleaded in full.
"2. That by the terms of the said will and item 9 thereof the said Fred P. Latham, deceased, directed his executors to make sale of certain personal property, and also certain land on South Creek and on the Sand Hills, and also certain perishable estate for the purpose of paying his debts, and appointed his two sons, Alex. C. Latham and the defendant Samuel W. Latham, executors to the said last will and testament.
"3. The defendant Samuel W. Latham qualified as the sole executor to the said last will and testament of the said Fred P. Latham, deceased, and letters of administration were issued to him in December, 1866.
"4. On or about 28 April, 1870, the defendant caused a special proceeding to be instituted before the clerk of the Superior Court of Craven County, wherein the heirs and devises of Fred P. Latham were made parties, and in said special proceeding, obtained an order of license to *Page 58 
make sale of all the real estate devised by the last will and testament of the said Fred P. Latham, and described in said will, which will is referred to for description thereof, and also other real estate not described in said will, and which said real estate is also described in the petition in the special proceeding heretofore referred to, which petition is made a part hereof for the purpose of a full and complete description of the real estate ordered to be sold.
"5. That pursuant to the order made in the said special proceeding, the said S.W. Latham, as executor of F. P. Latham, deceased, made sale of the lands devised in said will, and other lands described in said petition by deed dated 7 October, 1871, and recorded in book 97, page 133, in Craven County registry, for a consideration of $1,959, and on the same day the said Cicero Green conveyed said land to George Green, which deed is recorded in book 97, page 136, in the register's office of Craven County, and on the same day the said George Green conveyed the same lands to the defendant S.W. Latham, by deed recorded in book 97, page 126, register's office of Craven County.
"6. The plaintiffs allege further that the defendant S.W. Latham failed and refused to make sale of the Sand Hill lands and the South Creek lands mentioned in item 9 of the said will, and therein directed to be sold for the purpose of paying the debts of the said F. P. Latham, deceased, but made sale of the lands described in the petition, as aforesaid, including more than six thousand acres of land for less than $2,000, and many times less than the true value of the said land; that at the time of the sale of the said lands many hundred acres of same were cleared and in cultivation, with the old home place containing a valuable home and out-buildings and the 800-acre plantation devised to S.W. Latham in trust for A. C. Latham during his life, and then to his children, which had on it a valuable home and out-houses, and that the said lands so sold by the defendant S.W. Latham, as executor, were bought in by Cicero Green, and on the same day conveyed by the said Cicero Green to George Green, attorney and agent of defendant, for the same consideration, and on the same day conveyed by George Green to the said S.W. Latham, defendant, for the same consideration, and the plaintiffs allege that the defendant was in truth and in fact purchaser at his own sale, and had the said Cicero Green and George Green, his attorney and agent, to buy in said lands for him, and had the said Cicero Green to convey the same to George Green and the said George Green to convey the same back to the defendant for the purpose of covering up and concealing the fact that the defendant was the real purchaser, and that in truth and in fact no consideration whatever passed between the said Cicero Green and the said George Green, and they were conspiring with the defendant for the purpose of enabling the defendant to *Page 59 
purchase in all of said lands at his own sale made by him as executor of F. P. Latham, deceased, for many times less than the real value thereof, to enable him to get and hold title to same in fee simple clear of and discharged of the trusts declared by the aforesaid will."
The complaint then alleges certain sales and conveyances by S.W. Latham about the same time of certain real estate not described in the will of F. P. Latham, the greater portion of which were embraced in executor's petition for sale for assets, in 1870, or were included in the deeds by which S.W. Latham conveyed the said property to the Greens, and they in turn back to himself, and with averments that this and all the other realty had passed into the hands of third parties, whose title had matured by time and adverse possession of the holders. And in section 19 of complaint further allegation is made as follows:
"That these plaintiffs had no knowledge whatever of the matters and things hereinbefore alleged and the fraud and wrongs perpetrated on them by the defendant S.W. Latham until within less than a month of the institution of this suit, and within three years prior to the institution thereof. Neither these plaintiffs nor those under whom they claim had any knowledge of the matters and things and fraud herein alleged until within three years of the bringing of this suit."
And after alleging the great value of the lands dealt with in these proceedings, and that they were bought in by defendant executor at a nominal sum, the complaint closes with the statement and prayer as follows:
"These plaintiffs are informed and believe, and so allege, that they are entitled to recover of the defendant the value of the said lands and the value of the rents and the profits therefrom arising. And by reason of the wrongful acts of the defendant hereinbefore alleged, these plaintiffs allege that they have been damaged in the sum of $92,000, as their interest appears herein, and that the defendant is indebted to them in that amount, with interest from 7 October, 1871.
"Wherefore, the plaintiffs pray that they recover of the defendant the sum of $92,000, with interest thereon from 7 October, 1871, together with the costs of this action, and for such other and further relief as to the court seems proper."
In an amended complaint, filed by leave of court, plaintiffs set forth the pertinent dates principally of the births and deaths of the claimants or their ancestors in title, as it affects the rights involved in this controversy, as follows:
"1. That the deed from George Green to the said S.W. Latham, dated 7 October, 1871, and referred to in sections 5 and 6 of the complaint, and being recorded in book 97, page 126, and also the deed from Cicero Green to George Green, bearing like date, and recorded in *Page 60 
book 97, page 134, both were held from record, and were not registered until 14 January, 1888; Julia J. Latham, widow of F. D. Latham, deceased, died in 1888, after the death of A. C. Latham; that the said A. C. Latham died 25 September, 1886, leaving as his only children the plaintiff A. C. Latham and Mrs. Gaskill; that Mrs. Gaskill died 3 May, 1914, leaving surviving her as her only heirs at law her two children, to wit, the plaintiffs Annie Gaskill and Alex. Gaskill; that Josephine Potts, named in said will, died 24 April, 1895, and left surviving her as her children and heirs at law Z. M. Potts, J. R. Potts, Mrs. Lucy Hanks, Mrs. Kugler, and Fred L. Potts; that none of the plaintiffs had knowledge of the facts alleged in the complaint, constituting the fraud of S.W. Latham, until within three years of the bringing of this suit, said plaintiffs being nonresidents of Craven County, the defendant S.W. Latham, and also the other defendants, falsely represented to the plaintiffs that S.W. Latham had a life estate in said lands, and upon his death it would pass to these plaintiffs.
"2. The plaintiff A. C. Latham was born 22 May, 1861, his sister, Mrs. Gaskill, was born 24 June, 1852, and she has two surviving children, Annie Gaskill and Alex. Gaskill, who were born 2 May, 1889, and 12 April, 1891, respectively. Josephine Potts was born 4 August, 1833. Her youngest surviving child, who is the plaintiff, was born in 1873. Josephine Potts was married at the date of the devise alleged in the complaint, and remained until her death, in 1895. Mrs. Gaskill was married 26 January, 1882, and was survived by her husband.
"3. The plaintiff Lucy Hanks was married prior to the death of her mother, Josephine Potts, and has been a nonresident of the State since 1896, and the plaintiff Ida Kugler was married prior to the death of her mother, Josephine Potts, and has been a nonresident of the State since 1894, prior to the death of her mother; and that the plaintiff John R. Potts has been a nonresident of the State since 1889."
Defendants answer the complaint denying all averments of fraud or improper dealings on the part of S.W. Latham, as executor or otherwise, and allege that at the time of this transaction lands were comparatively of small value; that the bulk of the cleared and improved lands were subject to the life estate of the widow of F. P. Latham, and of his son, A. C.; that the estate was involved and a sale was necessary to satisfy the valid claims of creditors; that the purchase price of sale was all properly accounted for in payment of these claims and costs, and that in 1875 the executor filed his final account with the clerk of court at which accounting all of the predecessors in title and interest of present plaintiffs were represented by their counsel, one of them being personally present. The vouchers and accounts were fully examined into and *Page 61 
approved by them and officially by the clerk of the court. And the said account was then recorded in the proper book of settlements, and has been of record since said date.
The answer further alleges that all the dealings were fully known to plaintiffs at the time, or their ancestors in title, and pleads specifically the various statutes of limitations and presumptions applicable to the facts presented.
Upon perusal of the pleadings, the court entered judgment as follows: "This cause coming on to be heard before his Honor, W. M. Bond, judge, upon the pleadings filed in this action, it appearing from same that the statutes of limitations are pleaded, defendants moved the court to hold upon the facts alleged in the complaint and amended complaint, that said action is barred by said statutes, and to dismiss same, and both sides desiring the court to rule on said question so as to avoid the expense and save the time of lengthy trial, if said plea should bar plaintiffs action; from said facts, as alleged in the said complaint and amended complaint, the court being of the opinion, as a matter of law, that said action is barred by the statutes of limitations and laches of the plaintiffs, and by reason of the great length of time, laches, and neglect of the plaintiffs, they should not be allowed to further prosecute their action: It is thereupon ordered, considered, and adjudged by the court that said action be dismissed; that plaintiffs are not entitled to recover anything, and that defendants go without day and recover their cost herein.
"W. M. BOND, Judge Presiding."
Plaintiffs excepted, and appealed.
It is a practice approved in our decisions that where a cause is called for trial and the statute of limitations having been properly pleaded it appears from the face of the complaint and the uncontroverted facts that the plaintiff's cause of action is barred by statutory limitation of time, a judgment of nonsuit or dismissing the action on that ground will not be disturbed, though there may be valid exceptions for error in other phases of the trial. Rankin v. Oates, 183 N.C. 518; Earnhart v. Comrs.,157 N.C. 234-236; Oldham v. Rieger, 145 N.C. 254; Cherry v. Canal Co.,140 N.C. 422.
And especially is such course permissible where, as in this case, the parties have requested the court to dispose of the case on the question suggested. *Page 62 
This, then, being in accord with our procedure, the court clearly had the right to determine the controversy on perusal of the pleadings, and in our opinion has correctly ruled that in any aspect of the matter the plaintiff's cause is barred by the statute of limitations applicable.
As we understand the record, the gravamen of this demand is for a breach of duty on the part of S.W. Latham, deceased, as executor of his father, F. P. Latham, and for breaches of trust under his said will, in that without legal cause he has procured a sale by court decree of a large landed estate of F. P. Latham, amounting to six thousand acres or more, to pay debts not exceeding $5,000, and has by the intervention of nominal parties, bought in said estate and taken title thereto, or the greater part of it, for $1,959, and a mere nominal consideration, and after occupying said property under said deeds since said sale and conveyances, he has sold and conveyed the same to innocent purchasers for value, who now have and hold the title unimpeachable by action or otherwise on plaintiffs' part, and the relief demanded being against S.W. Latham and his successors, in interest for $92,000 damages incident to the fraud and breach of trust alleged against him. And this when it appears from the allegations of the complaint that the sale complained of was by regular proceedings in court, instituted in 1870, to which all of plaintiffs or their ancestors in title were duly made parties of record, when the deeds complained of were formally executed in 1871, and have been of record since 1888, and the property thereby conveyed has been in the open, exclusive, continuous, and adverse possession of the purchaser and others claiming under him since said date, and certainly since the death of the life tenants under the will of F. P. Latham, to wit, Julia J. Latham, widow of F. P., who died in 1888, and A. C. Latham, a son, who died in 1886. Recurring more particularly to the facts stated in the complaint, and the dates given by plaintiff in the amended complaint, they seem to be in full support of the statement from the carefully considered brief of defendant's counsel:
"This suit was commenced by summons dated 10 October, 1916, at which time the following number of years had elapsed since the several dates mentioned in the complaint, to wit:
"Fifty years since the death of Frederick P. Latham, the testator; and the qualification of Samuel W. Latham as executor.
"Forty-six years since special proceedings was instituted by the executor for sale for assets.
"Forty-five years since the deeds were executed conveying the lands, andtwenty-eight years since the deeds were registered.
"Forty-one years since Samuel W. Latham, executor, filed his final account and made settlement of the estate. *Page 63 
 "Thirty years since Alex. C. Latham, life tenant under item 3 of the will, died; at that time his son, Alex. C. Latham, was 25 years old, and is one of the plaintiffs now living; and Mrs. Gaskill, the devisor's daughter, and mother of the plaintiffs Gaskill, was 34 years old, and she lived until May, 1914.
"Twenty-six years since Julia J. Latham, widow of the testator, and life tenant under item 8 of the will, died. At that time Josephine Potts, the only remainderman under said item, represented in this suit, was 55 years old.
"Twenty-one years since the death of said Josephine Potts, and at the time of her death her youngest child was 22 years old.
"Seventeen years since coverture was a bar to the plea of adverse possession.
"When the suit was started the youngest plaintiff was 43 years old and the oldest plaintiff was 55 years old."
Assuming that the allegations of the complaint are broad enough to constitute and include a direct demand against S.W. Latham for malfeasance as executor, our decisions hold that the relationship between such and the beneficiaries of the estate becomes adversary in two years from his qualification, and such a claim will be barred, at most, within ten years from that date. Brown v. Wilson, 174 N.C. 668; Edwards v. Lemmons,136 N.C. 329.
Considering the complaint as a demand for an accounting by a trustee under the terms of the will, the devise to S.W. Latham in trust to collect and apply the rents and hires and interest, etc., of said estate to the support of A. C. Latham and his family during the life of A. C. Latham, and then to convey to his child or children, etc. This estate, constituting an active trust during the life of A. C. Latham, would become passive at his death, which occurred in 1886, and from that date the parties would be in an adverse relation to each other, putting the statute in motion and the claim on that account would be barred, at the furthest, in ten years from the death of A. C. Latham. Rouse v. Rouse, 176 N.C. 171. Assuredly so when there had been an open and avowed repudiation of any and all relationship as trustee. Rouse v. Rouse, supra; University v. Bank,96 N.C. 280.
Plaintiffs, however, contend that this is an action based upon the fraud of defendants, or their predecessor, S.W. Latham, whereby they have been wrongfully deprived of their property, and that the same comes under C. S., 441, subsec. 9, by which their claim is only barred within three years from the discovery of the facts constituting the fraud.
Conceding that plaintiffs' statement brings his cause within purview of this section, and undoubtedly this is the intent and purpose of the complaint, we have held in numerous decisions that under this clause an *Page 64 
action is barred within three years from the discovery of the facts or from the time when they should have been discovered in the exercise of proper diligence or reasonable business prudence. In re Johnson,182 N.C. 525-527; Sanderlin v. Cross, 172 N.C. 234-242; Ewbank v. Lyman,170 N.C. 505-508; Jefferson v. Lumber Co., 165 N.C. 49; Sinclair v. Teal,156 N.C. 458; Peacock v. Barnes, 142 N.C. 215.
On this question, in Johnson's case, supra, quoting with approval fromPeacock v. Barnes, supra, the Court said: "We do not hold, as appellant contends, that the statute begins to run from the actual discovery of the fraud, absolutely and regardless of any negligence or laches of the party aggrieved. A man should not be allowed to close his eyes to facts observable by ordinary attention and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish. In such case, a man's failure to note facts must be imputed to him for knowledge, and in the absence of some actual effort to conceal a fraud or some of the essential facts embraced in the inquiry, we think the correct interpretation of the statute should be that the cause of action shall be deemed to have accrued from the time the fraud was known or should have been discovered in the exercise of ordinary diligence."
It is insisted for the appellants that their cause does not come within the effects of this principle as a conclusion of law by reason of allegations in the complaint to the effect that one or more of plaintiffs were nonresident, and that S.W. Latham, who was their uncle, had told them that he had a life estate in the property, and that appellants' right and interest therein would not accrue until his death, but on the facts of this record, such a general averment is entirely insufficient to repel the bar of the statute or to raise any issue concerning it.
So far as the alleged nonresidence is concerned, it is well recognized that nonresidence of a claimant has no direct effect on the running of the statute of limitations (Ewbank v. Lyman, supra), and on the general allegations of information by S.W. Latham, the uncle, there was no claim that any trust or special confidence existed between these parties that might lead the one to depend upon the other, and so far as appears, they were all adult, and had been for many years, dealing at arms length with each other, and if any such statement was made, it would be entirely insufficient to qualify or affect the rights of the parties when it appeared that for 46 years there had been an open and notorious repudiation of any and all trust relationship, when every essential fact now made the basis of plaintiffs' claim was in great part set forth of record in a judicial proceeding to which the ancestors in title of these plaintiffs *Page 65 
were duly made parties, and when further there had been open, notorious possession of the property in the assertion of ownership under deeds of record since 1888, and which had been made pursuant to decrees had in the judicial proceedings referred to. The cause, therefore, comes clearly within the well considered decisions of the court in which claimants were affected with knowledge and notice of the facts in impeachment of their claim. Sanderlin v. Cross, 172 N.C. 234-243; Ewbank v. Lyman, 170 N.C. 505;Coxe v. Carson, 169 N.C. 132; Dunn v. Beaman, 126 N.C. 771; Cox v.Brower, 114 N.C. 422.
In Sanderlin v. Cross, supra, speaking in reference to knowledge or notice of impeaching facts disclosed of record, Allen, J., among other things, said: "It is true that in several of the cases, such as Modlin v.R. R., 145 N.C. 226; Tuttle v. Tuttle, 146 N.C. 493, and others, it is said that the registration of a deed is not sufficient to put a party on notice that a fraud has been committed; but in those cases the action was based on fraudulent representations in procuring a deed, and the record did not disclose any fraud or violation of trust, while in this case the record shows all of the facts for which the plaintiffs contend, and, in addition, there is the circumstance of possession."
The case then quotes with approval from Beaman's case, 126 N.C. as follows: "The case of Dunn v. Beaman, 126 N.C. 771, is strong authority for the position that when the facts appear on the record, the party is affected with notice. In that case a valuable tract of land was devised in 1844 to the children of John R. Beaman. The father qualified as guardian for the children, and filed an ex parte petition for a sale of the land for partition, and the land was sold and the sale confirmed, and the guardian received the purchase money. The children of Mr. Beaman did not know until within three years prior to the institution of their action that any land had ever been devised to them, or that their father was their guardian, or that the land had been sold. They presented their claim against the estate for the purchase money of the land, and having been made parties to a creditor's bill, one of the creditors pleaded the statute of limitations to the claim, and the children, while disavowing any charge of intentional fraud upon the part of their father, replied that they had discovered the facts within three years. The contention was not sustained, and it was held that their cause of action was barred."
The Court said: "The children had legal notice of the facts. The will of Carraway, under which their title accrued, was probated and recorded in 1844, and the land devised to them was sold for partition in 1861 at the courthouse door after due advertisement under a decree in equity; the proceedings in equity were duly recorded, to which three of the children, who were adults, together with their husbands, were parties *Page 66 
praying the sale, and the decree of confirmation was properly enrolled. The deed from the clerk and master to the purchaser was duly recorded in the register's office, and was notice to the children as well as to all the world, and they were put on notice by the recitals therein contained."
And on the effects and policy of statutes of presumption and limitations in cases where there has been long and inexcusable delay, Burwell, J., inCox v. Brower, supra, said: "The rule of presumption, when traced to its foundation, is a rule of convenience and policy, the result of a necessary regard to the peace and security of society. No person ought to be permitted to lie by whilst transactions can be fairly investigated and justly determined until time has involved them in uncertainty and obscurity, and then ask for an inquiry. Justice cannot be satisfactorily done when parties and witnesses are dead, vouchers lost or thrown away, and a new generation has appeared on the stage of life, unacquainted with the affairs of a past age, and often regardless of them. Papers which our predecessors have carefully preserved are often thrown aside or scattered as useless by their successors. It has been truly said that if families were compelled to preserve them they would accumulate to a burdensome extent. Hence, statutes of limitation have been enacted in all civilized communities, and in cases not within them, prescription or presumption is called in as an indispensable auxiliary to the administration of justice."
On careful consideration, we find no error in the record, and the judgment of the court dismissing the action is
Affirmed.