Arthur J. FULCHER, Jr., Appellee,

v.

UNITED STATES of America,
Appellant.

Arthur J. FULCHER, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 82–1212, 82–1246.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 11, 1982.

Decided Dec. 22, 1982.

Robert L. Klarquist, Dept. of Justice, Washington, D.C. (Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., Samuel T. Currin, U.S. Atty., Joseph T. Knott, III, Asst. U.S. Atty., Raleigh, N.C., Dirk D. Snel, Dept. of Justice, Washington, D.C., on brief), for appellant/cross-appellee.

Daniel D. Khoury, Manteo, N.C. (Christopher L. Seawell, Aldridge, Seawell & Khoury, Manteo, N.C., on brief), for appellee/cross-appellant.

Before PHILLIPS, MURNAGHAN, and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

The United States appeals a magistrate's order awarding compensation to Arthur J. Fulcher, Jr., for lands taken by the government for inclusion in the Cape Hatteras National Seashore Recreational Area. The magistrate found that Fulcher had brought a timely and well-founded claim under the Quiet Title Act, 28 U.S.C. § 2409a, and awarded compensation accordingly. Because we find that Fulcher's claim is time-barred under the Quiet Title Act, we reverse.

## I

The facts of this controversy are set out more fully in our prior *en banc* consideration of this case, *Fulcher v. United States,* 632 F.2d 278 (4th Cir.1980), and we discuss only the facts relevant to this appeal.

In 1959, the United States filed a complaint in condemnation and a declaration of taking pursuant to 40 U.S.C. § 258a, to acquire land for inclusion in the Cape Hatteras National Park. The land, located on Hatteras Island, Dare County, North Carolina, was owned by Arthur J. Fulcher, Jr.,[1] who then resided in California. The government was successful in its condemnation action but, due to a defective title search, the compensation was awarded to a person other than the true owner. A local paper had published a notice impleading all unknown owners, but Fulcher received no actual notice of the proceeding and entered no appearance.

After discovering that his property had been condemned, Fulcher brought an action on July 5, 1977, under 28 U.S.C. § 2409a[2] to recover title to the property. The district court dismissed the action for failure to state a claim, holding that the United States could not be divested of title acquired by a condemnation action pursuant to 40 U.S.C. § 258a. On appeal, the court reversed, 604 F.2d 295, holding that Fulcher had stated a claim under § 2409a even though he could not divest the government of its title. The case was remanded for consideration of the merits, including the application of the appropriate statute of limitations. *Fulcher,* 632 F.2d at 280.

The parties on remand stipulated[3] that the only issues were: 1) whether Fulcher's claim was barred by the 12-year statute of limitations of the Quiet Title Act, 28 U.S.C. § 2409a(f); and 2) if not, the amount of compensation owing to Fulcher.

The evidence showed that the Cape Hatteras National Park project had received extensive publicity, including newspaper coverage in area papers and public hearings on the matter. The National Park Service had also constructed a campground on the disputed property, and this campground was full to overflowing on weekends by the fall of 1964.

Despite these events, which occurred more than 12 years before this suit was filed, the magistrate held that Fulcher neither knew nor should have known of the government's claim prior to July 5, 1965. The magistrate reasoned that Fulcher had no actual or constructive notice of the claim because he had moved away from North Carolina by the early 1950's, the land was remote and had no visible boundary markers, the exact location of the property was unknown to Fulcher, and there was no evidence that Fulcher had actual knowledge of the operation of the campground prior to July 5, 1965. Fulcher was awarded compensation in the amount of $18,825.40.

---

**1.** At the time he filed this suit, Fulcher owned only a one-eleventh share of the tract; the other ten-elevenths were owned by other heirs of Fulcher's father. In 1981, Fulcher acquired the interests of all the other heirs. Although the limitations statute in this case runs from the time "the plaintiff or his predecessor in interest knew or should have known of the claim," 28 U.S.C. § 2409a(f), the case has proceeded from the beginning on the theory that Fulcher is the only relevant party for determining knowledge of the claim. Our disposition of the case does not require departure from this theory. The case, however, properly could have proceeded on the theory that Fulcher and the previous owners of the other ten-elevenths shares were the relevant parties.

**2.** 28 U.S.C. § 2409a provides in part:

(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands, nor does it apply to or affect actions which may be or could have been brought under sections 1346, 1347, 1491, or 2410 of this title, sections 7424, 7425, or 7426 of the Internal Revenue Code of 1954, as amended (26 U.S.C. 7424, 7425, and 7426), or section 208 of the Act of July 10, 1952 (43 U.S.C. 666).

**3.** The parties stipulated that Fulcher was the record title holder of the property in 1959 when the government paid the award to the wrong party, and that Fulcher was not given proper notice of the 1959 proceeding.

## II

Fulcher's claim for compensation is premised on the Quiet Title Act, 28 U.S.C. § 2409a. Section 2409a authorizes quiet title actions against the United States if the action is commenced within 12 years after the cause of action accrues. Section 2409a(f)[4] provides that the action accrues at the time the plaintiff "knew or should have known of the claim of the United States." The single and dispositive issue is therefore the time at which Fulcher should have become aware of the government's claim.[5]

The Quiet Title Act is a waiver of sovereign immunity by the United States. Such waivers can be limited by Congress, and any conditions imposed on the waiver, including time limits, must be strictly construed in favor of the sovereign. *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979). And because the Act waives the immunity of the United States, its construction is determined by federal law. *See United States v. Standard Oil Co.,* 332 U.S. 301, 309–10, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947); *Amoco Production Co. v. United States,* 619 F.2d 1383 (10th Cir.1980). Compatible state law is a valuable and appropriate tool, however, for meshing federal statutory language with the particular facts of a case, *see Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d

972 (1957). This is especially true in conflicts involving real property, where the Supreme Court "has consistently held that state law governs issues relating to . . . real property, unless some other principle of federal law requires a different result." *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 378, 97 S.Ct. 582, 590, 50 L.Ed.2d 550 (1977). Indeed, this court has earlier noted the propriety of looking to state law to determine when a litigant should have known of the government's claim to his land. *King v. United States,* 585 F.2d 1213 (4th Cir.1978); *see also Amoco Production Co.,* 619 F.2d at 1387 (reliance on local practices and rules regarding when a party should have known a relevant fact is proper). Thus we turn to North Carolina law for guidance in ascertaining the date when Fulcher should have become aware of the government's claim.

The doctrine of constructive knowledge is rigorously applied in North Carolina to situations concerning limitations periods in actions involving real property.[6] In actions for relief from real estate transactions infected by mistake or fraud, the cause of action accrues[7] "when discovery was or should have been made by the exercise of ordinary diligence." *Peacock v. Barnes,* 142 N.C. 215, 218, 55 S.E. 99, 101 (1906); *see also Ewbank v. Lyman,* 170 N.C.

---

4.  28 U.S.C. § 2409a(f) provides:

    Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

5.  Although the statute of limitations runs from the time when a party knows or should have known of this claim, there is little doubt that Fulcher had no actual knowledge of the government's actions prior to 1965. We therefore limit our discussion to his constructive knowledge, to when he "should have known."

6.  Our reliance on cases concerning adverse possession and fraud or mistake does not intimate that this case involves any of those elements. Neither is this a true action to remove a cloud on title, for which there is no period of

limitations in North Carolina. *Cauble v. Trexler,* 227 N.C. 307, 42 S.E.2d 77 (1947). Rather, our purpose in canvassing these North Carolina cases on the accrual of causes of actions concerning land and the attendant statutes of limitations is to divine the state's general view of the knowledge with which a prudent landowner should be charged where constructive knowledge is relevant to application of limitations periods in land litigation.

7.  N.C.Gen.Stat. § 1–52 (Cum.Supp.1981) provides:

    Within three years an action—

    .        .        .        .        .

    (9) For relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

505, 87 S.E. 348 (1915), *Latham v. Latham,* 184 N.C. 55, 113 S.E. 623 (1922). These cases recognize that it is a landowner's responsibility to exercise reasonable diligence in informing himself of the condition and extent of his property, and they hold that he is therefore chargeable with knowledge of those facts that reasonable diligence would reveal. As the court in *Peacock* recognized, a contrary view would penalize the observant landowner and reward the inattentive:

> A man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of ignorance. Such a principle would enable a careless man, and by reason of his carelessness, to extend his right to recover for an indefinite length of time, and thus defeat the very purpose the statute was designed and framed to accomplish. In such case, a man's failure to note facts of this character should be imputed to him for knowledge, and ... the cause of action will be deemed to have accrued from the time when the fraud or mistake was known or should have been discovered in the exercise of ordinary diligence.

*Id.* at 219, 55 S.E. 99.

Similarly, North Carolina adverse possession decisions stringently impose upon landowners the continuing duty to remain informed of activities and events occurring on their property at peril of finding their titles divested by adverse possessors. If the adverse possessor occupies property in such a manner that the true owner by reasonable diligence could know of the adverse claim the true owner will be deemed to have knowledge of this factual predicate for an ejectment action. *See* J. Webster, *Real Estate Law in North Carolina* § 290 (Rev. ed. 1981); *see also Bowers v. Mitchell,* 258 N.C. 80, 128 S.E.2d 6 (1962), *Cothran v. Akers Motor Lines, Inc.,* 257 N.C. 782, 127 S.E.2d 578 (1962). That the true owner is actually unaware of the adverse claim or has not visited the property for many years does not negate the constructive knowledge of the right to bring an ejectment action, *see Nichols v. York,* 219 N.C. 262, 13 S.E.2d 565

(1941), because the owner is responsible for discovering and investigating the adverse claim of ownership, *see Kennedy v. Maness,* 138 N.C. 35, 50 S.E. 450 (1905).

From these North Carolina land law decisions we deduce the following principles as relevant guides to the appropriate meaning and application of the federal limitations provision. A landowner must use reasonable diligence in exerting dominion over his land. The ownership of property carries the concomitant responsibility of being informed, by personal observation or through an agent, of the events and conditions that occur on the property. In litigation involving conflicting title claims, any lack of knowledge that is attributable to negligence or inattention of a title claimant is properly disregarded, and the knowledge reasonably obtainable by a prudent owner will be imputed to him.

### III

Guided by these principles, we disagree with the decision of the magistrate that Fulcher's lack of knowledge of the government's claim prior to July 5, 1965 was reasonable. The undisputed facts of record and applicable law preclude such a determination.

There was extensive publicity and discussion in the surrounding area concerning the government's openly announced plan for condemnation. More importantly, the National Park Service constructed and began operating a major public recreational campground on the land more than 12 years before Fulcher filed suit. This campground, which consisted of approximately 130 sites with full attendant facilities, was full to overflowing during weekends of August, 1964. A prudent landowner exercising reasonable diligence should, as a matter of law, have discovered the government's open and notorious occupation of the land by the fall of 1964, and we so hold.

The magistrate emphasized that the land was remotely situated, that Fulcher did not know where the parcel was locat-

ed, and that Fulcher resided in California. Under controlling legal principles of constructive knowledge, these facts do not support a finding that Fulcher's lack of actual knowledge was reasonable. Although the tract perhaps was remote and inaccessible at one time, the existence upon it of a large public campground in public use as early as August of 1964 indicates that by that time at the latest it was neither "remote" nor inaccessible. Under relevant North Carolina land law, a landowner's absence from the state is not a sufficient reason to toll the statute of limitations from running on a claim concerning his land. *See Latham v. Latham,* 184 N.C. 55, 113 S.E. 623 (1922); *Ewbank v. Lyman,* 170 N.C. 505, 87 S.E. 348 (1915).

## IV

Compliance with the 12-year limitations period in § 2409a(f) is a jurisdictional prerequisite for bringing an action under the Quiet Title Act. *Knapp v. United States,* 636 F.2d 279 (10th Cir.1980). Under relevant principles of constructive notice Fulcher "should have known" of the government's title claim no later than the fall of 1964, so that his 1977 action was not timely filed and should have been dismissed with prejudice.

Because, as our analysis demonstrates, the magistrate's contrary determination was based upon misapprehension or misapplication of controlling legal principles of constructive notice as found in the land law of the situs state, we reverse and remand for entry of a judgment dismissing the claim for compensation.

REVERSED.