This is an action brought by plaintiffs against defendant, American Surety Company, of New York and John L. Rogerson, administrator of Ernest L. Sawyer.
On 5 December, 1921, Ernest L. Sawyer was appointed and qualified as clerk of the Superior Court of Pasquotank County for the remainder of the term ending 4 December, 1922. Thereafter he was elected and served as clerk for the ensuing term beginning 4 December, 1922, and ending 4 December, 1926. Thereafter he was elected for the ensuing term, beginning 4 December, 1926, and served until 7 December, 1928, the date of his death. For each of said terms, or portion of said terms, he filed a bond in the penal sum of $10,000, with the American Surety Company of New York as surety. The first bond was executed on 16 December, 1921, and covered the period from 5 December, 1921, to 4 December, 1922. This action was instituted on 12 April, 1929, against the deceased clerk's administrator and his surety.
The following is the provision in each bond: "Now, if the said Ernest L. Sawyer shall account for and pay over according to law all moneys and effects which have come or may come into his hands by virtue or color of his office, or under an order or decree of a judge, even though such order or decree be void for want of jurisdiction or other irregularities, and shall diligently preserve and take care of all books, records, papers and property which have come or may come into his possession by virtue or color of his office, and shall in all things faithfully perform the duties of his office as they are or hereafter shall be prescribed by law, then this obligation is to be void; otherwise to remain in full force and effect." C. S., 927. *Page 327 
The case on appeal, as agreed to by the parties, in part, is as follows:
"There was also evidence tending to show that clerk Sawyer kept individual accounts of the various receipts and disbursements made by him, kept separate receiver's accounts, kept special fund account, kept the accounts of deposits for costs, etc., the records of which from his office were introduced in evidence by the plaintiffs. These records purport to show the correct balances due to each of the parties and funds, and the balance due to each of said funds at various times throughout his term of office.
There was evidence tending to show that clerk Sawyer kept records showing the correct amount and balance of moneys due the various funds and parties, and bank accounts showing the correct amount which he had on deposit in the various institutions, and records of his bank deposits, and that the various notes and securities referred to in the referee's report, aggregating $55,370.08, were kept by him in a pouch in his office, in the vault.
There was evidence tending to show that at the time of his death, on 7 December, 1928, clerk Sawyer had in his possession cash, checks notes, and other evidences of indebtedness as set out in the referee's report, and that the notes secured by mortgages, the deeds of trust, and other evidences of indebtedness referred to in the referee's report were of the date and payable as set out in said report.
There was evidence tending to show that there is a difference of $4,509.48 between the total amounts received by clerk Sawyer during the three terms for which he is chargeable, and the cash items, bank accounts and notes, mortgages, and other evidences of indebtedness mentioned in the referee's report after allowing to said clerk credit for disbursement and expenditures as appeared on his accounts, the net balance due each fund being as set out in referee's findings of facts Nos. 1, 2, 3 and 4. . . .
That the total amount of net balance, after allowing credits for expenditures made by said Sawyer, and without allowing credit for said notes in amount of $55,370.08, and which net balances were due by said E. L. Sawyer at the time of his death on account of various funds, aggregated $59,879.56, the various items of same being as appears in referee's report.
There was evidence tending to show the date of the various so called investments made by said clerk in the securities found in his office, and the amount of same as being as set out in the referee's report.
There was no evidence to show any report made by clerk Sawyer to the county commissioners or to their predecessors in office at any time during his incumbency in which any mention whatsoever was made *Page 328 
of these funds and particularly none in which any mention was made either of the receivership funds or the so called special funds like the Wadsworth, Jenkins, Pendleton and Hewitt funds.
There was no evidence whatsoever of any report made by clerk Sawyer to the county commissioners at any time during his incumbency or to any Superior Court judge in which any of the so called investments referred to in the referee's findings were listed or reported.
There was no evidence tending to show any report whatsoever by said clerk to a judge of the Superior Court in accordance with Rule 13 of the Superior Court.
There was no evidence whatsoever of any order made at any time specifically authorizing any or either of the so called investments.
There was no evidence whatsoever of any authorization by any judge or any board of commissioners or anyone else in authority for the mixture of these funds.
There was evidence tending to show a mixture of the funds by said clerk through investments in the so called securities, and evidence tending to show that as a result of the clerk's action in so mixing them it is impossible to allocate the investments or any of them to any particular fund or funds, and this is true even of those which were made payable to him as clerk Superior Court and of those which were made payable to him as receiver. That some of these so called investments were made payable to the clerk individually, or to bearer.
There was evidence tending to show that defendant, John L. Rogerson, qualified as administrator upon the estate of said Ernest L. Sawyer. That said estate was and is hopelessly insolvent. There was evidence tending to show that the present clerk, N.E. Aydlett, has duly qualified and that also he has been appointed receiver by proper orders of the court in succession to said Sawyer, and as such is now entitled to all of the funds which went into the hands of his predecessor by virtue of his position, both as clerk and receiver.
The accounts of Sawyer offered in evidence show that said Ernest L. Sawyer as clerk and receiver, kept no account of investments made in or of any particular fund, as required by law, that the so called investments were made in part in his own name and payable to bearer; that they were made in some instances to his kinsmen and insolvents; that some of the so called securities were worthless and uncollectible; that it is impossible at this time to separate and allocate the moneys which he received, or to properly place and apply the securities held by him hereinbefore referred to. There was evidence tending to show and the record is such that it is impossible to ascertain with any degree of certainty just what became of any particular fund which went into his hands or *Page 329 
to follow the same or any part thereof into any particular securities held by him at the time of his death.
There was no demand made upon said clerk by any of the parties plaintiff or their predecessors in title during his term of office.
This case on appeal contains all the evidence offered by all parties bearing upon the statute of limitations.
There was no evidence that any shortage, defalcation or misapplication was either discovered or suspected at any time prior to clerk Sawyer's death, within three years of the institution of this action. The records of all accounts were in his possession as clerk Superior Court in his office, and not in claimants' possession. The owners of said funds include many minors and some nonresidents. There was no evidence that any act or default on his part was brought to the attention of any of said claimants or discovered by them prior to his death. There was evidence that he promptly met all payments and disbursements required of him up to the time of his death. No claimant has any knowledge of any shortage or default until same was discovered by and through the audit of clerk Sawyer's accounts, made after his death at the instance of the board of commissioners of Pasquotank County."
The court below, among other facts, found:
"The referee finds as a fact, and that fact is approved by the court, that the facts as to the defalcations and misapplications of funds in the hands of said Ernest L. Sawyer, could not have been discovered by the plaintiffs in the exercise of reasonable care and diligence until after the death of said Sawyer on 7 December, 1928, or at least, within three years prior to the commencement of this action. The court also finds that there was never any demand made upon said clerk by any of the parties plaintiff, or their predecessors in title, during his term of office, and only by death was the statutory demand put into operation."
The judgment of the court below, in part, is as follows:
"Upon the facts as found by the referee, and approved by the court, and upon the law as understood by the court, it is now considered, ordered and adjudged that the plaintiff have and recover of John L. Rogerson, administrator of Ernest L. Sawyer, deceased, the sum of $59,811.81, with 12 per cent interest thereon, from 9 April, 1929, together with the costs of this action to be taxed by the clerk.
It is further adjudged that the plaintiffs have and recover of the defendant, the American Surety Company of New York, the sum of $10,000, representing the penalty of the bond dated 16 November, 1921; and the further sum of $10,000, being the full penalty of the bond dated 20 November, 1922, and the further sum of $10,000, being the *Page 330 
full penalty of the bond dated 15 November, 1926; said last recovery under the bond of 15 November, 1926, to be discharged upon the payment by said Surety Company of the sum of $9,575.78, with interest thereon at the rate of 12 per cent per annum from 9 April, 1929, and the costs of this action, to be taxed by the clerk, but in no event to exceed the penalty of the bond, to wit, ten thousand dollars.
It is further ordered and adjudged that the receivers heretofore appointed to take over the assets in the hands of said Ernest L. Sawyer, C. S.C. and receiver, at the time of his death, proceed to collect in and reduce to cash all of the notes, securities and collateral held by them, as rapidly as possible, and that the net collections therefrom be applied on this judgment against the defendant Rogerson, administrator, and, after the application of said collections, if the balance due on this said judgment be less than the full liability of the defendant surety company, to wit, $30,000, then said surety company shall not be required to pay any more than the balance due by the estate of E. L. Sawyer, after the application of said payments.
It is further ordered and adjudged that if the said Surety Company shall elect to pay into court the sum of $30,000, in exoneration of its liability under this judgment, then and in that event, it shall be subrogated to any and all equities in the assets of E. L. Sawyer, now in the hands of the receivers, other than what shall be required to pay the balance due by the estate of said E. L. Sawyer to the plaintiff herein. . . ."
Addenda to judgment:
"It is also considered and adjudged that the paragraph adjudging liability against the American Surety Company and beginning `It is further adjudged that the plaintiffs have and recover of the defendant, the American Surety Company of New York,' be amended to read as follows: It is further adjudged that the plaintiffs have and recover of the defendant, the American Surety Company of New York, the sum of ten thousand dollars, representing the penalty of the bond dated 16 November, 1921; and the further sum of $10,000, being the full penalty of the bond dated 20 November, 1922, and the further sum of $10,000, being the full penalty of the bond dated 15 November, 1926; said last recovery under the bond of 15 November, 1926, to be discharged upon the payment by said Surety Company of the sum of $9,575.78, with interest thereon at the rate of 6 per cent per annum from 9 April, 1929, but in no event to exceed the penalty of the bond, to wit, ten thousand dollars. Plaintiffs will also recover against said company the costs herein to be taxed by the clerk." The material exceptions and assignments of error will be considered in the opinion. *Page 331 
The court below rendered judgment against the defendant John L. Rogerson, administrator of Ernest L. Sawyer, deceased, for $59,811.81, with 12 per cent interest thereon from 9 April, 1929, from which judgment no appeal was taken. The defendant American Surety Company, alone appealed, so we consider only the question presented by defendant American Surety Company.
(1) Is this action barred by the statute of limitations as to the bond, executed by the deceased clerk and his surety, covering the period from 5 December, 1921, to 4 December, 1922, inclusive?
The American Surety Company, frankly in its brief states: "The one question upon this point is whether the six-year statute (C. S., 439), or the three-year statute (C. S., 441(9), providing for relief on the ground of fraud or mistake is applicable. To state the question more specifically — is the instant case controlled by S. v. Gant, ante, 211?" We think the action is controlled by the Gant case, supra.
The defendant contends: "In the Gant case, supra, it appeared that the defendant, clerk, had not only misapplied moneys received by virtue or color of his office, to wit, certain pension funds, but that by systematized forgeries and false entries in his records he had both obtained the funds and concealed their misapplication. Upon the facts in the Gant case, as stated in the Court's opinion, a thorough investigation of his office, at any time until just before the suit was instituted, would have failed to disclose the slightest irregularity. It required an accident to discover his long continued misapplications. In the instant case the converse is true. It appears from the case on appeal that `There was evidence tending to show that clerk Sawyer kept records showing the correct amount and balance of moneys due the various funds and parties, and bank accounts showing the correct amount which he had on deposit in the various institutions, and records of his bank deposits, and that the various notes and securities referred to in the referee's report aggregating $55,378.08, were kept by him in a pouch in his office in a vault.' There was no evidence to the contrary. This is shown by the further statement in the case on appeal, to wit: `This case on appeal contains all of the evidence offered by all parties bearing upon the statute of limitations.'"
But it also appears from the case on appeal that "There was no evidence to show any report made by the clerk Sawyer to the county commissioners or to their predecessors in office at any time during his *Page 332 
incumbency in which any mention whatsoever was made of these funds and particularly none in which any mention was made either of the receivership funds or the so called special funds like the Wadsworth, Jenkins, Pendleton and Hewitt funds. There was no evidence whatsoever of any report made by clerk Sawyer to the county commissioners at any time during his incumbency or to any Superior Court judge in which any of the so called investments referred to in the referee's findings were listed or reported. There was no evidence tending to show any report whatsoever by said clerk to a judge of the Superior Court in accordance with Rule 13 of the Superior Court. There was no evidence whatsoever of any order made at any time specifically authorizing any or either of the so called investments. There was no evidence whatsoever of any authorization by any judge or any board of commissioners or anyone else in authority for the mixture of these funds. There was evidence tending to show a mixture of the funds by said clerk through investments in the so called securities, and evidence tending to show that as a result of the clerk's action in so mixing them it is impossible to allocate the investments or any of them to any particular fund or funds, and this is true even of those which were made payable to him as clerk Superior Court and of those which were made payable to him as receiver. That some of these so called investments were made payable to the clerk individually, or to bearer."
C. S., 956, is as follows: "On the first Monday in December of each andevery year, or oftener, if required by order of the board of commissioners or any other lawful authority, clerks of the Superior Courts shall make anannual report of all public funds which may be in their hands. The report shall be made to the board of county commissioners and addressed to the chairman thereof. It shall give an itemized statement of said funds so held, the date and source from which they were received, the person to whom due, how invested and where, in whose name deposited, the date of any certificate of deposit, the rate of interest the same is drawing, and other evidence of investment of said fund; and it shall include statement of all funds in their hands by virtue or color of their office, and which may belong to persons or corporations. The report shall be subscribed and verified by the oath of the party making it before any person allowed to administer oaths" (Italics ours.)
Rules of Practice in the Superior Court, 200 N.C. at p. 845: "(13) Every clerk of the Superior Court, and every commissioner appointed by such court, who, by virtue or under color of any order, judgment, or decree of the court in any action or proceeding pending in it, has received or shall receive any money or security for money, to be kept *Page 333 
or invested for the benefit of any party to such action, or of any other person, shall, at the term of such court held on or next after the first day of January in each year, report to the judge a statement of said fund, setting forth the title and number of the action, and the term of the court at which the order or orders under which the officer professes to act were made, the amount and character of the investment, and the security for the same, and his opinion as to the sufficiency of the security. In every report, after the first, he shall set forth any change made in the amount or character of the investment since the last report, and every payment made to any person entitled thereto. The report by the next preceding paragraph shall be made to the judge of the Superior Court holding the first term of the court in each and every year, who shall examine it, or cause it to be examined, and, if found correct, and so certified by him, it shall be entered by the clerk upon his book of accounts of guardians and other fiduciaries."
The law above set forth, C. S., 956, requires a report from the clerk in detail on the first Monday in December of each and every year (or oftener, if required by order of the board of commissioners — an open hand;
and to the same effect is Rule 13, supra. The record discloses contrary to the statute and rule — a closed hand — "a mixture of the funds" and as a result "It is impossible to allocate the investment," etc.
In Ewbank v. Lyman, 170 N.C. at p. 508, citing numerous authorities, the following principle is stated: "Under authoritative decisions here and elsewhere construing this and similar statutes, it has been very generally held that these words, `The action not to be deemed to have accrued until the discovery of the facts constituting the fraud,' etc., by correct interpretation mean until the impeaching facts were known or should have been discovered in the exercise of reasonable business prudence." Sanderlinv. Cross, 172 N.C. 234; Latham v. Latham, 184 N.C. 55.
The matter is fully discussed in S. v. Gant, 200 N.C. at pp. 226, 7, 8, 9.
C. S., 934, is as follows: "At every regular term of the Superior Court for the trial of criminal cases the solicitor for the judicial district shall inspect the office of the clerk and report to the court in writing. If any solicitor fails or neglects to perform the duty hereby imposed on him, he is liable to a penalty of one hundred dollars to any person who sues for the same." Defendant cites the above statute.
The negligence of others in the nonperformance of duty did not relieve the defendant clerk of his duty. Again, a clerk is an insurer.
"In Smith v. Patton, 131 N.C. at p. 397, we find: `It is settled in this State that the bond of a public officer is liable for money that *Page 334 
comes into his hands as an insurer, and not merely for the exercise of good faith. . . . (Citing authorities.) Bonds of administrators, executors, guardians, etc., only guarantee good faith,' citing authorities. Marshallv. Kemp, 190 N.C. at p. 493; Gilmore v. Walker, 195 N.C. at p. 464;Indemnity Co. v. Corp. Com., 197 N.C. 562." S. v. Gant, supra, at p. 226.
The court below found: "The referee finds as a fact, and that fact is approved by the court, that the facts as to the defalcations and misapplications of funds in the hands of said Ernest L. Sawyer, could not have been discovered by the plaintiffs in the exercise of reasonable care and diligence until after the death of said Sawyer on 7 December, 1928, or at least, within three years prior to the commencement of this action. The court also finds that there was never any demand made upon said clerk by any of the parties plaintiff, or their predecessors in title, during his term of office, and only by death was the statutory demand put into operation." We think the evidence on this record sufficient to support the above finding.
(2) If not, what sum is recoverable upon the bond covering said period?
In Gilmore v. Walker, 195 N.C. at p. 464, speaking to the subject "It is established in law in this State that failure of the clerk to pay upon demand, raises the presumption that the money was misappropriated and converted upon receipt thereof, and the burden is upon him to show the contrary." Presson v. Boone, 108 N.C. 79; Marshall v. Kemp, 190 N.C. 491.
In Williams v. Hooks, 199 N.C. at p. 492, the following observation is made: "Thus, if the clerk makes an investment in the utmost good faith and in the exercise of sound business judgment, and the investment fails, he is still responsible for the money and must pay it to the person entitled thereto. If he deposits the money in a bank of known and approved solvency and the bank thereafter fails, he must suffer the loss, because if he fails to pay upon demand the law presumes that he misappropriated the fund at the very instant it came into his hands."
Under the facts and circumstances of this case, the sums of money received by said clerk covering said period not exceeding the penalty of the bond, $10,000, is recoverable.
(3) Are the orders of Judge Sinclair entered at the September Term, 1929, of the Superior Court of Pasquotank County, and the order of Judge Small entered at March Term, 1930, valid orders; and, if so, what is their significance?
The material portion of the order of Judge Sinclair, is as follows: "It is further ordered that said receivers be, and they are hereby *Page 335 
authorized, and directed to pay over to N.E. Aydlett, clerk of Superior Court, such funds as they have collected, less an amount sufficient to defray the expenses of the receivership, and to take from said clerk a receipt for the amount so paid, which payment shall operate as a credit on the liability of the defendant, Surety Company, in this proceeding."
But it appears thereafter, at March Term, 1930, that Judge Small made the following order: "It further appearing that the funds collected by saidreceivers should be properly paid to said clerk and thereupon operate as acredit in the final adjustment of the liability of the defendants,administrator and surety company; Now, therefore, it is ordered, decreed and adjudged that N.E. Aydlett and J. H. LeRoy, Jr., receivers, be, and they are hereby authorized and directed to pay over to N.E. Aydlett, clerk Superior Court, such funds as they may hereafter collect as such receivers, less an amount sufficient to defray the expense of said receivership, and to take from said clerk a receipt for the amounts so paid, which paymentsshall operate as a credit on the liability of the defendant Rogerson,administrator, and of the defendant, Surety Company, in this proceeding."
(Italics ours.)
No exceptions were taken by the litigants to either of these orders. The referee found, and this finding was sustained by the court below, that "The defendant Surety Company is entitled to recover of the defendant administrator the amount of its ultimate liability to plaintiffs with interest and costs, expenses and attorneys' fees in this action and should be subrogated to plaintiffs' rights in any assets remaining in the hands of the receivers after the plaintiffs' rights therein have been fully satisfied."
We think the orders of Judges Sinclair and Small temporary instructions by the court to its officers, the receivers, made without hearing on the merits and not intended and in no way prejudicial to the contentions presented by the pleadings. The appellant contends that these orders areres judicata and do not permit the judgment rendered. The order of Judge Small is later than Judge Sinclair's. No exception was taken by appellant and it distinctly says "therefore operate as a credit in the finaladjustment of the liability," etc. The matter was in fieri.
The case of Wellons v. Lassiter, 200 N.C. 474, is not applicable to the facts in this case. From the view we take of the case we do not think it necessary to discuss certain contentions made by interveners. The judgment below is
Affirmed. *Page 336