ROBERT E. VAIL, WILLIAM C. VAIL, S. PERRY VAIL, AND WINNIE VAIL YOW, v. V. B. VAIL AND WIFE, FAY VAIL.

(Filed 2 February, 1951.)

**1. Fraud § 1—**

While fraud may not be defined, it embraces the taking of undue or unconscionable advantage of another through breach of legal or equitable duty by acts, omissions, or concealments.

**2. Same—**

To constitute actionable fraud there must be a false representation or concealment of a material fact, which is reasonably calculated to deceive and made with the intent to deceive, which does deceive to the hurt of the injured party.

**3. Same—**

The breach of duty by a fiduciary to disclose all material facts constitutes fraud.

**4. Same—**

A fiduciary relationship exists whenever there is special confidence on the one side which results in superiority or influence on the other, and the relationship exists as between an agent and his principal.

**5. Fraud § 5—**

The general rule that a literate party who signs an instrument is charged with knowledge of its contents, does not apply when the party offering the instrument for signature stands in a fiduciary relationship and there are elements of positive fraud and deception justifying the person signing the instrument in not discovering its contents.

**6. Cancellation and Rescission of Instruments §§ 2, 12—Evidence held sufficient for jury in this action to cancel deed for fraud.**

Plaintiffs' evidence tending to show that defendant was accustomed to looking after his aged mother, running a great many errands and performing many personal services for her, and helping in collecting her rents, that she directed him as her agent to prepare a conveyance of a certain lot to himself as a gift, that he surreptitiously substituted the description of a larger and more valuable tract and by silently pretending that the deed was written as directed, procured his mother's signature without her discovering the substitution of descriptions, with evidence that shortly after her death he admitted to others his subterfuge, *is held* sufficient to make out a *prima facie* case of fraud sufficient to overrule defendant's motion to nonsuit.

**7. Limitation of Actions § 16—**

Upon defendant's plea of the applicable statute of limitations, the burden is upon plaintiffs to show their claim is not barred.

**8. Limitation of Actions § 5b—**

A cause of action based on fraud does not accrue and the statute of limitations does not begin to run until the facts constituting the fraud are known or should have been discovered in the exercise of due diligence.

**9. Same—**

Where the person perpetrating the fraud is a fiduciary, the party defrauded is under no duty to make inquiry until something happens which reasonably excites his suspicion that the fiduciary has breached his duty to disclose all the essential facts and to take no unfair advantage.

**10. Same—**

The mere registration of a deed, standing alone, will not be imputed for constructive notice to the grantor that a description other than the one intended had been surreptitiously substituted therein, in the absence of facts and circumstances sufficient to put the defrauded person upon inquiry, certainly where the person preparing the deed stands in a fiduciary relationship to the grantor.

**11. Same—Facts constituting fraud held not discoverable in exercise of due diligence by defrauded grantor.**

Defendant was directed by his mother to prepare a conveyance to himself of a certain tract of land. Defendant surreptitiously substituted a description of a larger and more valuable tract, which deed reserved therein, as directed, a life estate in the grantor. The grantor died some three years and seven months thereafter. There was nothing to rebut the inference that she retained possession of the property until her death. *Held:* There being nothing to excite the grantor's suspicion or to put her upon inquiry during her lifetime, the statute did not begin to run against her, and the action of the devisees of the property to set aside the conveyance for fraud, instituted within three years of the grantor's death, is not barred. G.S. 1-52 (9).

**12. Same—**

Knowledge by a devisee that the grantee in a deed executed by his ancestor had perpetrated a fraud by substituting a different description in the deed, the statute not having begun to run against the grantor in her lifetime, *held* not to bar the devisee's action to set aside the conveyance for fraud instituted within three years of the grantor's death, since the devisee had no cause of action until the grantor's death.

APPEAL by plaintiffs from *Bennett, Special Judge,* February Term, 1950, of GUILFORD.

Civil action to set aside a deed from the late Minnie P. Vail, mother of the plaintiffs, to her son, Victor B. Vail, for fraud and deceit allegedly practiced by him upon his mother in causing to be inserted in the deed to

him the description of a lot different from and of greater value than the one intended by the mother to be conveyed.

Plaintiffs allege in their complaint: That on 2 October, 1944, the late Minnie P. Vail executed and delivered to her son, Victor B. Vail, a deed to a certain lot located on South Main Street in the city of High Point, known as the Vail home place; that at that time Minnie P. Vail was a widow approximately seventy-eight years of age; that her son, the defendant Victor B. Vail, frequently acted as her agent in handling her rental real estate; that sometime prior to 2 October, 1944, Mrs. Minnie P. Vail, mother of the plaintiffs, authorized her son, Victor B. Vail, to lay off a small lot with a house thereon, located on Vail Alley some distance from the Vail home place, and obtain an accurate description so she could convey the house and lot to him as a gift; that Victor B. Vail failed to carry out the instructions of his mother; that, instead, and contrary to her wishes and directions, and without her knowledge, he caused to be inserted in the deed to him the description of the Vail home place on South Main Street, embracing property of much greater value than the small lot and house intended by the mother to be conveyed. Plaintiffs further allege that they are residuary legatees under the will of their mother and as such are entitled to have the deed made by her to Victor B. Vail set aside.

The defendants filed answer denying the material allegations of the complaint and setting up the three-year statute of limitations. G.S. 1-52, subsection 9, in bar of plaintiffs' right to recover.

Upon the trial in the court below, the plaintiffs offered evidence in pertinent part as follows: for the purpose of attack, the deed from Minnie P. Vail to Victor B. Vail, dated 2 October, 1944, filed for registration in the Public Registry of Guilford County 3 October, 1944, conveying the Vail home place located on South Main Street in the city of High Point. The following reservation appears in the deed: "The grantor, Minnie P. Vail, retains the use, control and ownership of the premises during the period of her natural life." Plaintiffs also offered portions of the will of Minnie P. Vail, showing that, subject to small bequests of personal property to two children not parties to this action, she devised and bequeathed the residue of her property of every kind to her "other children to be divided equally, share and share alike, among them, their names being S. Perry Vail, Robert E. Vail, Victor (B.) Vail, Winnie Vail Yow, and William C. (Sam) Vail." The summons was offered in evidence showing that the action was instituted 15 December, 1948. The following portion of the defendants' further answer was admitted in evidence: "That the mother of the defendant Victor B. Vail, the late Minnie P. Vail, was a widow and lived for many years alone and that the defendant Victor B.

Vail was accustomed to looking after his mother, running a great many errands and performing many personal services for her."

Testimony was offered by the plaintiffs showing that Minnie P. Vail died 10 May, 1948, about eighty-two years of age; that on 2 October, 1944, the date of the deed to Victor B. Vail, Minnie P. Vail owned the Vail home place described in the deed, and that she also owned at that time the small lot on Vail Alley referred to in the pleadings. The testimony of the witnesses also tended to establish that the Vail home place was worth $16,000.00 or more, whereas the property on Vail Alley was worth only about $1,200.00.

S. Perry Vail, one of the plaintiffs, testified to a conversation he had with the defendant Victor B. Vail in the presence of W. C. (Sam) Vail and Mrs. S. Perry Vail the second day after the funeral of the mother, when the children were discussing some of the details of the settlement of the estate. The witness, S. Perry Vail, in the course of his testimony related that: "Sam (William C. Vail) said to Vic (Victor B. Vail): 'Vic, tell Perry and Meely (Mrs. S. Perry Vail) just how you come by the old home place'; and Vic broke down and commenced crying and he said: 'Well, I tell you, I gave the wrong description and had the deed made out for the home place instead of the little place that Mother told me I could have on Vail Alley. I come by this property wrong—I got it wrong. I will deed it back to the estate just any time you all say so.'" There was testimony of other witnesses cumulative to and corroborative of the foregoing statements of Perry Vail. The plaintiff, Perry Vail, further testified that sometime later he approached Victor about deeding the property back to the estate and that Victor refused, stating: "It is mine and I am not going to turn it back. I am going to keep it."

The plaintiff, Winnie Yow, testified in part as follows: ". . . he (Victor B. Vail) helped to collect some of the rents . . . as to mother's business ability, well, in the last four or five years of her life she was tired—she was old and she was tired. Yes, she could have been influenced by others in signing or executing papers. In the latter years of my mother's life she was subject to being influenced by other parties in the transaction of her affairs."

There was further evidence tending to show that Victor B. Vail lived near his mother and was in and out of her home at frequent intervals during the last years of her life.

At the close of the plaintiffs' evidence, the defendants demurred to the evidence and moved for judgment of nonsuit. The motion was allowed, and from judgment based on such ruling, the plaintiffs appealed, assigning errors.

*Clyde E. Gooch and Roberson, Haworth & Reese for plaintiffs, appellants.*

*J. J. Shields and Thomas Turner for defendants, appellees.*

JOHNSON, J.　The evidence in this case tends to show these determinative factors: (1) that the defendant, Victor B. Vail, the grantee in the deed, stood in a confidential or fiduciary relation with the grantor, Mrs. Minnie P. Vail; and (2) that she retained possession and control of the lands embraced in the deed during the remainder of her life.　These crucial circumstances being made to appear, along with the rest of the evidence offered below, made out a *prima facie* case entitling the plaintiffs to go to the jury on both the issue of fraud and that of the statute of limitations.

The issue of fraud: Fraud has no all-embracing definition.　Because of the multifarious means by which human ingenuity is able to devise means to gain advantages by false suggestions and concealment of the truth, and in order that each case may be determined on its own facts, it has been wisely stated "that fraud is better left undefined," lest, as *Lord Hardwicke* put it, "the craft of men should find a way of committing fraud which might escape a rule or definition." *Furst v. Merritt,* 190 N.C. 397 (p. 404), 130 S.E. 40.　However, in general terms fraud may be said to embrace "all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another, or the taking of undue or unconscientious advantage of another." 37 C.J.S., Fraud, Section 1, p. 204.

These essential facts must appear in order to establish actionable fraud: "(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) and which does, in fact, deceive; (5) to the hurt of the injured party." *Ward v. Heath,* 222 N.C. 470, 24 S.E. 2d 5.　The material elements of fraud, a commission of which will justify the court in setting aside a contract or other transaction, are stated by *Barnhill, J.,* in *Ward v. Heath, supra,* as follows: "First, there must be misrepresentation or concealment.　Second, an intent to deceive or negligence in uttering falsehoods with intent to influence the acts of others.　Third, the representations must be calculated to deceive and must actually deceive.　And, fourth, the party complaining must have actually relied upon the representations."

The nature and extent of the proofs required to establish fraud depend to a large extent on the relationship of the parties, and ordinarily, "a greater degree of proof is required to show fraud as between parties dealing at arm's length than is necessary where the fraud feasor sustains a

confidential relation toward his alleged victim." 37 C.J.S., Fraud, Section 114, p. 432.

Where a relation of trust and confidence exists between the parties, "there is a duty to disclose all material facts, and failure to do so constitutes fraud." 37 C.J.S., Fraud, Section 16, p. 247.

23 Am. Jur., Fraud and Deceit, Section 14, p. 765, states the rule thus: "Where a confidential or fiduciary relationship exists, it is the duty of the person in whom the confidence is reposed to exercise the utmost good faith in the transaction and to refrain from abusing such confidence by obtaining any advantage to himself at the expense of the confiding party. Should he obtain such an advantage, he will not be permitted to retain the benefit; and the transaction will be set aside even though it could not have been impeached had no such relation existed, whether the unconscionable advantage was obtained by misrepresentations, concealment or suppression of material facts, artifice, or undue advantage."

The rule is amplified in 23 Am. Jur., Fraud and Deceit, Section 81, p. 858, as follows: "It is a well-settled principle of the law of fraud, applied particularly by courts of equitable jurisdiction, that it is the duty of a person in whom confidence is reposed by virtue of the situation of trust arising out of a confidential or fiduciary relationship to make a full disclosure of any and all material facts within his knowledge relating to a contemplated transaction with the other party to such relationship, and any concealment or failure to disclose such facts is a fraud. This principle is universally observed, although the transaction cannot be impeached if no such relationship exists."

For a comprehensive discussion of what constitutes a confidential or fiduciary relation, see *Abbitt v. Gregory,* 201 N.C. 577 (p. 598), 160 S.E. 896. In general terms, a fiduciary relation is said to exist "Wherever confidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence." 37 C.J.S., Fraud, Section 2, p. 213. Suffice it to say, without more, that as between principal and agent, the relation applies with all of its rigor in all of its implications. *McNeill v. McNeill,* 223 N.C. 178, 25 S.E. 2d 615; 37 C.J.S., Fraud, Section 16, pp. 248 and 249; Am. Jur., Fraud and Deceit, Section 14, p. 763 *et seq.*

The defendants, contending that the evidence was insufficient to take the case to the jury on the issue of fraud, urge that there is no evidence showing that Victor B. Vail said or did anything at the time the deed was signed to prevent his mother from reading it, and that in the absence of some proof that she did not read the deed, or was prevented from reading it, she being literate, is presumed to have read it. On this premise,

defendants contend that the evidence does not justify the inference that Minnie P. Vail was deceived by anything her son Victor said or did. Defendants say the case is governed by the rule which ordinarily precludes a literate person who signs an instrument from asserting, in the absence of fraud, that he did not read the instrument and was ignorant of its purport. The defendants rely on the decisions in *Ward v. Heath, supra; Colt Co. v. Kimball,* 190 N.C. 169, 129 S.E. 406, and cases therein cited.

The defendants' position is untenable and the authorities relied on are distinguishable. In the cases cited, the parties were dealing at arm's length, and in neither of the cases was the complaining party lulled into security by fraud or artifice of the other party and thereby prevented from reading the instrument. In the instant case the parties stood in a confidential relation, and the evidence tends to show elements of positive fraud and deception, reasonably calculated to dull the mother's call to vigilance and justify her in not discovering the contents of the deed : It appears in evidence that Mrs. Vail was a widow about seventy-two years of age when she made the deed; that she lived alone; that "Victor was accustomed to looking after his mother, running a great many errands and performing many personal services for her"; that he helped collect her rents. It is also in evidence that two days after his mother's funeral Victor confessed to some of the plaintiffs that: . . . "I gave the wrong description and had the deed made out to the old home place instead of the little place that mother told me I could have on Vail Alley. I came by this property wrong. . . . I got it wrong. I will deed it back to the estate just any time you all say so."

The evidence here, standing as it does undenied and unexplained, is sufficient to support these findings and inferences : that Mrs. Vail, reposing confidence in her son, Victor, directed him, as her agent, to have the small Vail Alley lot run off and deed thereto prepared so she might convey it to him as a gift; that he, in breach of his trust, surreptitiously substituted the description of the larger, more valuable Vail home place on South Main Street; that by fraudulently suppressing the true state of facts while silently pretending that the deed contained the Vail Alley property, he thereby procured from his mother lands not intended by her to be conveyed, and that she, under the circumstances of the confidential relation with her son, was lulled into security by his fraud and signed the deed without discovering, in the exercise of due diligence, the true state of facts. In short, we conclude that the evidence, measured by the applicable rules of law, is sufficient to sustain, though not necessary to impel, a finding of all the essential elements of fraud. That makes it a *prima facie* case for the jury.

The issue of the statute of limitations: The defendants having set up the three-year statute of limitations, G.S. 1-52, subsection 9, in bar of plaintiffs' right to recover, the burden of proof devolved upon the plaintiffs to show that their cause of action was not barred, *i.e.,* the burden was upon the plaintiffs to show that their cause of action did not accrue until sometime within the period of three years next before the commencement of the action. *Taylor v. Edmunds,* 176 N.C. 325, 97 S.E. 42; *Sanderlin v. Cross,* 172 N.C. 234, 90 S.E. 213; *Hooker v. Worthington,* 134 N.C. 283, 46 S.E. 726; 54 C.J.S., Limitations of Actions, Section 388, p. 527.

Under the statute pleaded here, a cause of action, like this one, to set aside an instrument for fraud, accrues, and limitations begin running, when the aggrieved party discovers the facts constituting the fraud, or when, in the exercise of reasonable diligence, such facts should have been discovered. *Blankenship v. English,* 222 N.C. 91, 21 S.E. 2d 891; *Wimberly v. Furniture Stores,* 216 N.C. 732, 6 S.E. 2d 512, and cases therein cited. See also 34 Am. Jur., Limitations of Actions, Section 165, p. 132.

And it is the accepted rule that "knowledge by the defrauded person of facts which in the exercise of proper diligence would enable him to learn of the fraud ordinarily is equivalent to discovery of fraud." 54 C.J.S., Limitations of Actions, Section 189, p. 188. The rule is concisely stated by *Stacy, C. J.,* in *Blankenship v. English, supra:* "A party having notice must exercise ordinary care to ascertain the facts, and if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired, had he made the necessary effort to learn the truth of the matters affecting his interests." In this respect the law regards the means of knowledge as knowledge itself. *Hargett v. Lee,* 206 N.C. 536, 174 S.E. 489; *Pasquotank County v. Surety Co.,* 201 N.C. 325, 160 S.E. 176; 54 C.J.S., Limitations of Actions, Section 189, p. 190. However, it is generally held that "the failure of the defrauded person to use diligence in discovering the fraud may be excused where there exists a relation of trust and confidence between the parties." 54 C.J.S., Limitations of Actions, Section 194, p. 198. This is so for the reason that a confidential or fiduciary relation imposes upon the one who is trusted the duty to exercise the utmost of good faith and to disclose all material facts affecting the relation. Also, a confidential relation by its very nature presupposes that the confiding party, in deference to the confidence and trust reposed in the other party, may in a measure relax his faculties of vigilance and act upon the assumption, until notice to the contrary, that the person in whom confidence is reposed will disclose, in the honest performance of his duty, all of the essential facts connected with the relation and take no unfair advantage. Accordingly, it is generally held that when it appears that by reason of the confidence reposed the confiding party is actually deterred from sooner suspecting

or discovering the fraud, he "is under no duty to make inquiry until something occurs to excite his suspicions." 54 C.J.S., Limitations of Actions, Section 194, p. 199.

In *Small v. Dorsett,* 223 N.C. 754, bot. p. 761, 28 S.E. 2d 514, quoting from 34 Am. Jur., Limitation of Actions, Section 168, p. 135, the applicable rule is stated as follows: "Where a confidential relationship exists between the parties, failure to discover the facts constituting fraud may be excused. In such a case, so long as the relationship continues unrepudiated, there is nothing to put the injured party on inquiry, and he cannot be said to have failed to use due diligence in detecting the fraud. . . . Similarly, an agent, sued for fraud, cannot set up that the principal should have suspected him."

Our decisions hold that the mere registration of a deed, containing an accurate description of the *locus in quo* and indicating on the face of the record facts disclosing the alleged fraud, will not, standing alone, be imputed for constructive notice of the facts constituting the alleged fraud, so as to set in motion the statute of limitations. In addition to the record, there must be facts and circumstances sufficient to put the defrauded person on inquiry which, if pursued, would lead to the discovery of the facts constituting the fraud. *Tuttle v. Tuttle,* 146 N.C. 484, 59 S.E. 1008; *Modlin v. Railroad,* 145 N.C. 218, 58 S.E. 1075; *Stubbs v. Motz,* 113 N.C. 458, 18 S.E. 387. All the more is this so where the parties stand in the confidential relation of principal and agent, wherein the duty of the principal to investigate becomes subordinate to that of the agent to disclose the true state of facts.

It appears in evidence that Minnie P. Vail lived only three years, seven months, and eight days after the deed was executed. The action was instituted by the plaintiffs seven months and five days after her death. The deed shows on its face that the "use, control and ownership" of the property was reserved for Mrs. Vail during the rest of her life. This reservation, nothing else appearing, supports the inference that she retained possession of the property until her death. And such evidence of possession becomes a relevant circumstance bearing heavily on the issue of the statute of limitations. It, when considered in connection with the confidential relation of the parties, is sufficient on this record to sustain the inference and conclusion that after the deed was made by Mrs. Vail nothing occurred during the rest of her life to excite her suspicion or put her on such inquiry as should have led, in the exercise of due diligence, to a discovery of the fraud, and that therefore the plaintiffs' action is not barred by the statute of limitations.

The defendants contend that the nonsuit below should be affirmed on authority of the decisions in *Massengill v. Oliver,* 221 N.C. 132, 19 S.E. 2d 253; *Blankenship v. English,* 222 N.C. 91, 21 S.E. 2d 891; and

*Sanderlin v. Cross,* 172 N.C. 234, 90 S.E. 213. These cases are distinguishable. No confidential relation appears to have existed in either of them. In *Sanderlin v. Cross, supra,* and in *Massengill v. Oliver, supra,* the grantors did not, as in the instant case, retain possession of the *locus in quo.* In the *Sanderlin case* the grantees immediately went into and remained in the open, notorious possession of the lands for more than thirteen years before the death of the grantor. It also appears that the timber was cut and removed from a large portion of the land seven or eight years before the suit was instituted. The *Massengill case* involved farm lands. There, the grantee went immediately into and remained in open, undisputed possession for more than nine years before the suit was commenced. In the *Blankenship case,* the plaintiff acquired title to real property, subject to a contract of record permitting the timber to be cut within three years, thinking the time for cutting was eighteen months. At the trial he admitted he was told a week after the purchase that the time was three years. After being so put on notice, he failed to examine the public records or bring suit for wrongful cutting within three years. Therefore, having slept on his rights for more than three years after notice, clearly his action was barred by limitations.

The defendants stress the evidence tending to show that one of the plaintiffs, W. C. Vail, knew his brother Victor had a deed for the home place before his mother's death. However, it is not made to appear when W. C. Vail received notice, nor does it appear that he ever passed on to his mother his information about the deed. Be that as it may, the wrong here complained of was solely against Minnie P. Vail. She alone had the right to maintain an action for redress in her lifetime; as long as she lived, limitations could run only against her. No right of action accrued to the plaintiffs until her death, and therefore until then limitations did not run against them. *Holt v. Holt,* 232 N.C. 497, 61 S.E. 2d 448. See also 9 Am. Jur., Cancellation of Instruments, Section 45, p. 389. What is here said, of course, is not at variance with the rule that when the statute of limitations has started running against the ancestor, but at his death the action is not barred, the statute continues to run against the heir or devisee. *Frederick v. Williams,* 103 N.C. 189, 9 S.E. 298.

With the case going back for a new trial, we refrain from further comment or discussion, since the defendants' evidence, as indicated in aspects of the cross-examinations, may develop a different state of facts surrounding the execution of the deed and subsequent events from what now appears on the *prima facie* level.

The judgment of the court below is

Reversed.