NASH v. MOTOROLA COMMUNICATIONS AND ELECTRONICS

[96 N.C. App. 329 (1989)]

S.E.2d 551, 553 (1981), *disc. rev. denied*, 304 N.C. 728, 288 S.E.2d 381 (1982).

Upon remand the court may enter judgment for the appropriate balance of child support arrearages.

Reversed and remanded.

Judges ARNOLD and BECTON concur.

———————————

CLAUDE E. NASH AND JANIS WESSOLLECK v. MOTOROLA COMMUNICATIONS AND ELECTRONICS, INC., CHARLES ROBINSON, MOTOROLA, INC. AND AIRCALL, INC.

No. 8829SC1266

(Filed 21 November 1989)

**Unfair Competition § 1 (NCI3d); Limitation of Actions § 8.2 (NCI3d) — unfair trade practices — electronic paging business — accrual of cause of action**

In an action for unfair trade practices arising from the termination of plaintiff's FCC license and electronic paging business, the statute of limitations on plaintiff's claim did not begin to run until 29 January 1982, the date of actual notice of the violation to plaintiff by the FCC. Where plaintiff, by reasonably diligent effort, could not have ascertained that he was in violation of FCC regulations, he would have had no cause of action against defendants for fraudulent misrepresentation. N.C.G.S. § 75-1.1.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 633, 713.**

Judge PHILLIPS concurring in the result.

APPEAL by plaintiff Claude E. Nash (Nash) from judgment entered 29 June 1988 in HENDERSON County Superior Court by *Judge Hollis M. Owens, Jr.* Heard in the Court of Appeals 17 May 1989.

On 12 January 1986, plaintiffs Nash and Janis Wessolleck (Wessolleck) filed a complaint against named defendants alleging unfair trade practices under G.S. 75-1.1. From an order granting summary judgment to defendants, Motorola, Inc. (Motorola), Motorola Communications and Electronics (Motorola C & E) and Charles Robinson (Robinson), Nash appeals.

*Alley, Hyler, Killian, Kersten, Davis & Smathers, by Patrick U. Smathers and Robert J. Lopez, for plaintiff-appellant.*

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Roy W. Davis, Jr. and Michelle Rippon, for defendant-appellees.*

LEWIS, Judge.

Undisputed facts in the record reveal that from January or February 1981 until January 1982 plaintiff was involved in the electronic paging business. This business consisted of three separate and allegedly independent components: 1) Nash Equipment Leasing: operated by Nash and furnishing through lease or sale individual paging devices, 2) Secre-Tel: operated by Wessolleck and providing message dispatching services, and 3) Fletcher Seamless Guttering: owned by James Fletcher who held the actual Federal Communications Commission (FCC) license and with whom individual paging customers would contract to share the use of his license. This licensing arrangement was called a "shared arrangement" and was formed allegedly in an attempt to conform to certain FCC regulations and restrictions which disallowed one person or entrepreneurial business from combining the sales and leasing of paging or communications equipment with dispatching services.

On 29 June 1981 defendant Aircall, Inc. (Aircall), a radio common carrier service operating in the same geographic area as plaintiff, filed a complaint against plaintiff with the FCC alleging among other things: 1) plaintiff's operation was not in reality a "shared arrangement" but a common carrier service and in violation of FCC regulations, and 2) plaintiff's business had operated without a valid FCC license since December 1980 because plaintiff's original licensee, Walter Jecker, had died in December and the FCC had not assigned his license to Fletcher nor issued Fletcher a new license. Aircall also filed a complaint with the North Carolina Utilities Commission (NCUC) on 24 July 1981 setting forth similar allegations in regard to state regulations. NCUC held a hearing on the matter on 5 January 1982 but did not issue a ruling. On 29

January 1982 the FCC notified plaintiff and Fletcher to cease and desist operation of the paging business because they were not in compliance with FCC regulations. Upon advice of legal counsel, Fletcher voluntarily surrendered his license to the FCC and plaintiff discontinued operating his business. Subsequently, and in light of plaintiff's actions, NCUC granted Aircall's motion to dismiss its complaint with prejudice.

In his complaint, plaintiff specifically alleges that defendants Robinson, Motorola and Motorola C & E made false or deceptive statements to him regarding the setup of his paging business to persuade him to purchase equipment and that defendants in effect used plaintiff as a "guinea pig" to test the acceptability of his licensing arrangement under state and federal communications regulations when they knew or should have known of its potential illegality. By way of their answer, defendants affirmatively pled the statute of limitations, asserting that the four-year statute of limitations ran as of 12 January 1986, while the plaintiffs filed their complaint on 29 January 1982.

G.S. 75-16.2 provides that "[a]ny civil action brought under this Chapter to enforce the provisions thereof shall be barred unless commenced within four years after the cause of action accrues." Plaintiff contends the action accrued on 29 January 1982 when the FCC notified plaintiff to cease and desist operation of his business. Defendants contend that the action accrued at the earliest in the summer of 1980 when plaintiff and Robinson first made contact and the misrepresentations were allegedly first made, or at the latest in the summer of 1981 when the FCC and NCUC complaints were filed.

Plaintiff's action under G.S. 75-1.1 is based on fraudulent misrepresentation. Under North Carolina law, "an action accrues at the time of the invasion of plaintiff's right." *Rothmans Tobacco Co., Ltd. v. Liggett Group, Inc.*, 770 F.2d 1246, 1249 (4th Cir. 1985). For actions based on fraud, this occurs at the time the fraud is discovered or *should have been discovered* with the exercise of reasonable diligence. *Id.* Given that plaintiff was not actually notified that he was in violation of FCC regulations until 29 January 1982, the issue is whether plaintiff can be presumed to have had inquiry notice of the violation and hence constructive knowledge of the alleged fraudulent misrepresentation of defendants prior to 12 January 1982. Plaintiff will be deemed to have had inquiry notice

if, once he became aware of the FCC and NCUC complaints against him in June 1981, he could have ascertained by a reasonably diligent effort from facts available to him that he was in violation. *See Vail v. Vail*, 233 N.C. 109, 116, 63 S.E.2d 202, 207 (1951).

Upon our review of the record and of FCC Regulations and Reports, we cannot determine that plaintiff's shared licensing arrangement was in clear violation of previously stated FCC policies. Where we cannot so determine, neither can we presume that plaintiff could have done so. We therefore conclude that plaintiff did not have inquiry notice of the illegality of his shared licensing arrangement prior to 12 January 1982. *Id.* Where plaintiff, by a reasonably diligent effort, could not have ascertained that he was in violation of FCC regulations, he would have had no cause of action against defendants for fraudulent misrepresentation. We conclude that the statute of limitations did not begin to run until 29 January 1982, the date of actual notice of the violation to the plaintiff by the FCC. For these reasons, we believe the plaintiff should have his day in court.

Reversed.

Judge BECTON concurs.

Judge PHILLIPS concurs in the result.

Judge PHILLIPS concurring in the result.

I concur only in the result of the majority opinion. The reason the statute of limitations did not start to run until the Federal Communications Commission made plaintiffs stop operating their business, in my opinion, is that before then plaintiffs had not been damaged, had nothing to sue about, and an action would have been dismissible on its face. And whether plaintiffs ought to have known before then that the FCC could prevent them from operating as planned is immaterial since the record does not suggest, much less establish, that the ways of the FCC about matters of this kind are so predictable that communications law specialists, much less ordinary businessmen, should have known that the Commission would ban the activity involved. Instead, the record suggests that in opening, closing, or otherwise regulating the airways the FCC has the discretion to make and does make all kinds of exceptions and that its policies and practices can be as important to those

subject to them as the wording of a regulation. Thus, whether defendants represented that they knew that the FCC's policy was not to forbid operations like plaintiffs', and whether plaintiffs had a right to rely thereon are issues of fact that the judge had no authority to decide.