MARY WALKER KAYLOR, Plaintiff,
v.
CARROL HAYDEN FOX, Defendant.
No. COA07-1272
Court of Appeals of North Carolina
Filed June 17, 2008
This case not for publication
D. Shawn Clark, for plaintiff-appellee.
Sigmon, Clark, Mackie, Hutton, Hanvey & Ferrell, P.A., by Jason White, for defendant-appellant.
STEELMAN, Judge.
Where evidence presented at trial supported plaintiff's claim of constructive fraud, the trial court did not err in denying defendant's motion for directed verdict and motion for judgment notwithstanding the verdict.

I. Factual and Procedural Background
On 23 March 1994, Mary Kaylor (plaintiff) and her brother-in-law, Carrol Fox (defendant), entered into a contract whereby defendant would lease the apartment located on plaintiff's property ("agreement"). The parties retained an attorney to memorialize the agreement, which was recorded in the Caldwell County Register ofDeeds office. In addition to the lease of plaintiff's apartment, the agreement provided that defendant would have the right to purchase the entirety of plaintiff's property, including her house, for $100,000 within 180 days of plaintiff's death or such time as she elected to sell the property. The agreement further provided that, if defendant exercised the right of first refusal, sixty percent of all rentals paid under the lease would be credited toward the purchase price. Plaintiff was provided a copy of the agreement, which she placed in a bedroom drawer in her home.
Beginning in 1994, defendant paid plaintiff $232.50 per month rent, as required by the agreement. Defendant also made additional payments toward the purchase price of the property, which totaled approximately $4,000.00. Defendant provided receipts to plaintiff on notebook paper for all payments made.
On 13 October 2006, plaintiff filed a complaint in Caldwell County District Court, seeking a declaration that the agreement was invalid and an order rescinding the agreement on the grounds that it was procured by fraud. Plaintiff also sought an accounting and award of damages against defendant in an amount equal to the rental payments collected by defendant less any expenses paid by defendant on plaintiff's property, and costs, including attorneys' fees.
The case went to trial on 15-16 May 2007. The jury found that defendant induced plaintiff to enter into the agreement by constructive fraud, and that defendant had not proven his defense of openness, fairness, and honesty. The jury further found that plaintiff filed her complaint within three years from the date onwhich she knew or should have known with reasonable diligence of her claim against defendant. Judge Elliott entered judgment on 31 May 2007, declaring that the agreement was rescinded and declared void. Defendant appeals.

II. Motion for Directed Verdict
In his sole argument on appeal, defendant contends that the trial court erred in denying his motion to dismiss and his motion for judgment notwithstanding the verdict on the grounds that the evidence established as a matter of law that plaintiff's claims were barred by the statute of limitations. We disagree.
The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict, the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor . . . or to present a question for the jury.
Davis v. Dennis Lilly Co., 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991) (internal citations omitted). The standard of review of a decision to grant or deny a motion for directed verdict is identical to that of a decision to grant or deny a motion notwithstanding the verdict, and "[a] trial court's decision to grant or deny a motion for directed verdict or a motion notwithstanding the verdict will not be disturbed on appeal absent an abuse of discretion."Crist v. Crist, 145 N.C. App. 418, 422, 550 S.E.2d 260, 264 (2001) (citation omitted). To establish a claim of constructive fraud, a plaintiff must show that she and defendant "were in a `relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" Toomer v. Branch Banking & Tr. Co., 171 N.C. App. 58, 67, 614 S.E.2d 328, 335 (2005) (citations omitted).
The statute of limitations on a claim of fraud is governed by N.C. Gen. Stat. . 1-52, and provides that a cause of action for fraud shall be brought within three years of "discovery by the aggrieved party of the facts constituting the fraud or mistake." N.C. Gen. Stat. . 1-52(9) (2007). "Discovery" means either the actual discovery or when discovery should have occurred "by reasonable diligence under the circumstances." Bennett v. Trust Co., 265 N.C. 148, 154, 143 S.E.2d 312, 317 (1965). "Where a confidential relationship exists between the parties, failure to discover the facts constituting fraud may be excused." Small v. Dorsett, 223 N.C. 754, 761, 28 S.E.2d 514, 518 (1944) (citation omitted). "[I]t is generally held that when it appears that by reason of the confidence reposed the confiding party is actually deterred from sooner suspecting or discovering the fraud, he `is under no duty to make inquiry until something occurs to excite his suspicions.'" Vail v. Vail, 233 N.C. 109, 116-17, 63 S.E.2d 202, 208 (1951) (emphasis added, quotation omitted).
The trial court instructed the jury that "the Plaintiff and the Defendant were brother- and sister-in-law. You are instructedthat under such circumstances, a relationship of trust and confidence existed."
Defendant did not object to the jury instructions at trial and does not dispute on appeal that he and plaintiff shared a relationship of trust and confidence. Plaintiff testified that defendant told her that the agreement was a lease to the apartment, and that she believed him due to their close relationship and familial ties.
Plaintiff further testified that she did not learn that defendant had inserted additional provisions into the agreement until December 2004. During this time, plaintiff had a conversation with defendant and her sister, Charlotte Walker, in which defendant told plaintiff he and Mrs. Walker wanted to put her in a nursing home. Plaintiff testified that defendant stated "me and Charlotte's going to move in this house and you're going to the rest home . . . [n]ow, you get that blue book out and read it." Following this conversation, plaintiff hired an attorney to review the agreement, at which point she learned of the purchase option provision.
In light of the uncontested confidential relationship, plaintiff was not under a duty to make an inquiry into potential fraud by defendant until a triggering event occurred. Vail at 117, 63 S.E.2d at 208. Plaintiff presented evidence that the triggering event occurred in December of 2004. Plaintiff filed her complaint on 13 October 2006, which was within three years of the December 2004 conversation. When viewed in the light most favorable to plaintiff, the evidence is sufficient to show that plaintiff's lawsuit was filed within three years of the event which gave rise to her suspicions of fraud. This argument is without merit.
Defendant contends that plaintiff is charged with knowledge of the facts which constitute the alleged fraud from the time she executed the agreement. Defendant argues that in the absence of evidence showing that he willfully misled or misinformed plaintiff as to the contents of the agreement, or that the contents were kept from her in fraudulent opposition to her request, she is presumed to have read the agreement. See Williams v. Williams, 220 N.C. 806, 809-10, 18 S.E.2d 364, 366 (1942). Defendant contends that the instant case is governed by the rule that "[a] person signing a written instrument is under a duty to read it for his own protection, and ordinarily is charged with knowledge of its contents. Nor may he predicate an action for fraud on his ignorance of the legal effect of its terms." Biesecker v. Biesecker, 62 N.C. App. 282, 285, 302 S.E.2d 826, 828-29 (1983) (citation omitted).
Although defendant correctly cites these general principles of law, the instant case is distinguishable due to the parties' admitted fiduciary relationship. The jury found that defendant committed constructive fraud, which requires evidence that the defendant used his position of trust and confidence to induce plaintiff to enter into "the transaction in which defendant is alleged to have taken advantage of his position of trust to thehurt of plaintiff." Rhodes v. Jones, 232 N.C. 547, 549, 61 S.E.2d 725, 725 (1950). Our Supreme Court has held "that charging actual fraud is `more exacting' than charging constructive fraud." Patuxent Development Co. v. Bearden, 227 N.C. 124, 128, 41 S.E.2d 85, 87 (1947).
In the instant case, the evidence disclosed and the jury found that the relationship, both business and familial, existing between plaintiff and defendant, was such that plaintiff was justified in placing her trust and confidence in defendant. Further, the evidence tended to show "elements of positive fraud and deception, reasonably calculated to dull [plaintiff's] call to vigilance and justify her in not discovering the contents of the deed[.]" Vail at 115, 63 S.E.2d at 206. At the time the parties signed the agreement, plaintiff was 70 years of age and widowed. She had no business experience and suffered significant health problems: hearing loss, a heart condition, partial paralysis from polio, and recurring skin cancer which required multiple surgeries. The evidence suggested that she relied on defendant to help her secure renters for her apartment and collect rent payments. The evidence tended to show that defendant led plaintiff to believe that the agreement was a lease for her apartment, and did not disclose to her "all material facts" about the agreement, such as the purchase option provision. See id. The evidence is sufficient to support an inference that defendant fraudulently suppressed the true state of facts and that plaintiff was lulled into signing the lease by defendant's fraud without discovering the true state of facts. Seeid. Plaintiff testified that "I trusted him to lease  he was just to lease the apartment and I didn't understand anything else. I thought it was just the apartment, or I wouldn't have signed it."
The evidence also suggests that defendant used his position of confidence to gain an unfair advantage over plaintiff. Defendant proposed the agreement to plaintiff and dictated the terms of the agreement. Defendant and his wife, plaintiff's sister, brought plaintiff to an attorney's office to sign the agreement. The agreement stated that defendant could use sixty percent of the total rent payments toward the purchase price of plaintiff's property. Since the rent defendant paid to plaintiff was money that he collected from the renters of plaintiff's apartment, defendant was in a position to "purchase" plaintiff's property without the outlay of personal funds. Further, there was no increase in the rent defendant paid to plaintiff over the 13 years of the agreement. Defendant wrote the receipts for the rental payments and plaintiff merely signed those receipts.
Viewing this evidence in the light most favorable to plaintiff, we hold that the trial court did not err in allowing the jury to consider plaintiff's claim and in denying defendant's motion for directed verdict. We further hold that the trial court did not err in denying defendant's motion for judgment notwithstanding the verdict. Defendant does not argue that the trial court abused its discretion, and we hold that it did not. This argument is without merit. Defendant has voluntarily abandoned his remaining assignment of error.
AFFIRMED.
Judges MCCULLOUGH and ARROWOOD concur.
Report per Rule 30(e).